## Case No. 1,892.

### The BRISTOL.

### NARRAGANSETT STEAMSHIP CO. v. PONTON et al.

[10 Blatchf. 537.] [1]

Circuit Court, S. D. New York.    March 15, 1873. [2]

COLLISION—STEAM AND SAIL—SPEED—FOG—DAMAGES.

1. If a steamboat continues her course at very nearly her highest speed, in a fog so dense that an approaching vessel, with all proper lights, cannot be seen at a distance of 300 feet, and a collision ensues, the steamboat must be held to have been in fault.
[Cited in The Rhode Island, 17 Fed. 557.]

2. A vessel was sunk by a collision, in Long Island sound, and abandoned, but was afterwards discovered, and raised, and libelled for salvage, and sold, and repaired by the purchaser. There was nothing to show that it was evident that the cost of raising and repairing her would, with the loss of her use, amount to more than she would be worth after being repaired. It did, in fact, cost more to raise and repair her than she was worth after she was repaired: *Held*, that it was proper to allow, as damages for her loss, her full value at the time

she was sunk. The finding of the commissioner, as to the amount of such value, allowed to stand.
[Cited in The Venus, 17 Fed. 926; The Havilah, 1 C. C. A. 519, 50 Fed. 333.]

[In admiralty. For a statement of the case, see Case No. 1,890. Decree of the district court therein affirmed.]

Charles Donohue, for the barque.
Dudley Field, for the steamboat.

WOODRUFF. Circuit Judge. 1. I concur fully with the district judge (4 Ben. 397 [The Bristol, Case No. 1,890]) in his conclusion upon the merits in these cases; and, on that branch of the controversy, I only desire to reiterate the denial of the claim made in behalf of the steamboat, that, in a fog so dense that an approaching vessel, with all proper lights, cannot be seen at a distance of 300 feet, (which, in this case, is less than the length of the steamer,) a steamboat may continue her course at full speed, or very nearly at her highest speed, without being charged with the damages, if collision is caused thereby. The struggle made here is not new, and this court is gravely urged to excuse the steamboat, by proof that masters of steamboats do, in fact, run, in a fog, at the same speed as in clear weather, that the navigation of the steamer is conducted more safely by so doing, and that the profitable conduct of the business of a passenger steamboat requires it, for, otherwise, it could not make its proper time, and patronage would be wanting. Utter disregard of the safety of other vessels is thus made the rule of navigation by such steamboats. No such considerations can be permitted to justify conduct so reckless, so at war with the settled rules of navigation by the maritime law, and clearly in the face of an express statute, which requires steamships, in a fog, to go at a moderate speed, and which the court is asked to practically repeal. Act April 29, 1864, art. 16 (13 Stat. 61). The proof here, from the steamboat herself, is, that she was running at the rate of 16 miles an hour, her usual speed, her maximum speed being only 18, uninfluenced by a fog so dense that her navigators could not see an approaching vessel less than her own length distant, and this, too, when the wind was blowing from behind her, and greatly diminishing the chance that she would hear any signals from such approaching vessels. It is not necessary to enlarge upon the recklessness of this conduct; and I only add, that, upon the other questions at issue on the merits, the decree of the court below was clearly in accordance with the weight of the evidence.

2. As to the damages. Since the decision of the two cases cited by counsel (The Catharine, 17 How. [58 U. S.] 170, and the Baltimore, 8 Wall. [75 U. S.] 377), there ought not, I think, to be any doubt as to the rule governing the ascertainment of damages in this case. The barque was sunk by the col-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirming the decree of the district court in Case No. 1,890.]

lision, in Long Island sound. To save their lives, the master and crew were taken on board of the steamboat and brought to New York. The sunken vessel was discovered by the master of another vessel, who, with the assistance of a wrecking company, raised her, and took her to the port of New Haven, where they libelled her for salvage, and she was sold, and the purchaser repaired her, so far as he deemed it practicable or expedient. The collision, and an injury to the vessel, nor even the sinking of the vessel, did not, per se, give to her owners a right to abandon her and claim from the steamboat her full value. On the other hand, if, as matter of fact, to be established by proper evidence, the vessel could not be raised and repaired except at an expense exceeding her value when raised and repaired, then the steamboat which caused that condition of things is liable for such value, as of the date of the injury, whether such vessel is raised or not. This is not upon any theory of the right of abandonment, as known in the law of insurance, but is because, both in fact and in law, the loss is total. How such a state of things is to be established, when a vessel is not raised, or by what evidence, it is unnecessary here to consider. If the fact be proved by competent evidence, then it is for the interest of the party in fault that he be permitted to indemnify the owners by paying such total value, and the owners cannot be required to accept less than that value. If the vessel be, in fact, raised and repaired by her owners, the party in fault must pay the amount which it cost to repair her, so that she shall be as good as she was before the collision, together with a just compensation, in the nature of demurrage, for the loss of her use for the period necessary to raise and repair her. It is not necessary for the purposes of this case, to say, whether, if such expense of repairs and loss of use exceed the value of the vessel before the collision, the wrong-doer can reduce the recovery to such value and interest. A case may occur in which the folly of attempting to raise and repair the vessel may be so obvious, and the injustice to the wrong-doer, of charging him with expenses which ordinary care and prudence would show to be unwise and unprofitable, so apparent, that nothing more than the original value and interest should be allowed; and, on the other hand, there may be cases in which the owner, acting in good faith, and with the care and prudence of prudent men in the conduct of their own affairs, deems it best to raise and repair the vessel, in the honest belief that something of value will be saved thereby, and yet the actual cost, together with the loss of the use of the vessel, may be so great, as to show, in the end, that it would have been a saving had he left the vessel where she lay, and purchased another vessel for his use. How far his good faith and exercise of care, prudence and judgment may avail

to enable him to claim full reimbursement and complete indemnity, in such case, it is not here material to say. Bringing these contingencies into view may, nevertheless, be of use to illustrate the case now presented. Here, the vessel was, in fact, raised and was repaired. The proofs do not show a condition of things, at and immediately after the collision, which will warrant the owners of the steamboat in saying that the vessel ought not to have been raised and repaired. They do not claim that she ought to have been left where she lay, but the contrary. Now, one of two alternatives was before her owners—1st, to leave her, and assume the burthen of showing a justification, by proof that it would cost more to raise and repair her, so as to be as good as she was before the collision, than she would be worth when repaired, or, at least, that such cost and the loss of her use would exceed such value; or, 2d, to raise and repair her, or cause her to be raised and repaired, and look to the wrong-doer for the expense and for such loss. Here the owners of the vessel did nothing, themselves. (1) If they have proved, that raising and repairing, properly conducted, would cost more than her value, then, as above stated, they are entitled to such value. The commissioner has found the fact, that it did actually cost more to raise and repair her, so far as she was repaired, than she was worth when the repairs were done, and, although counsel have criticised some of the items included by him in estimating such expenses, I think the proofs sustain his finding; and this, it will be seen by his report, is without any allowance for the use of the vessel during the time in which, had the owners themselves made the repairs, they must have lost such use. True, the value of such use was not proved, so as to furnish a ground of estimate; but, this leaves the naked finding, that the cost of repairs alone exceeded her value when those repairs were finished. Besides this, the proofs show, that, if the purchasers had made the repairs so extensive as to put her in the same condition as she was in before the collision, the expenses would have very greatly exceeded her value at that time, and would have been much more than the commissioner reported as her value. (2) The owners themselves, having done nothing, and having undertaken to show, that, to raise and repair the vessel would cost more than she would be worth when repaired, it was entirely competent for the owners of the steamboat to insist that she was, in fact, raised and repaired. They do so, and that is was the duty of her owners to raise and repair her. It, therefore, becomes immaterial, whether the raising and repairing was actually done by the owners or by third persons. They may adopt the act, so far forth as actual experience proved that it cost, and would have cost them, at least her value, to raise and repair her. It is for that purpose, and to justify

them in claiming her full value, as an indemnity, or, rather, in claiming that nothing less than her full value could be an indemnity, that the experience of the purchasers becomes important; and it is just as important and influential, to that extent, as if all that they did was done as the agents of the former owners. No rule of law was, therefore, violated, in allowing to the owners the full value of their vessel.

Upon the amount of that value there was a great conflict of evidence. I do not think that the testimony taken in this court materially changes the state of the proofs, in that respect. No doubt, the commissioner has allowed full value. Possibly, on an original examination of all the proofs, I might have thought an amount somewhat less would be an indemnity to the owner, but, the witnesses were many of them examined in the presence of the commissioner, and he had an opportunity to see them, and judge of their manner of testifying, and, so, of their credibility, and the weight to be accorded to what they testified. I do not think, that, either upon the value of the vessel, or of the articles lost by the officers and crew, the finding of the commissioner should be disturbed.

The result is, that the decree of this court, in affirmance of the decree of the court below, must award to the owners of the barque the damages and costs decreed below, and the suit against such owners must be dismissed, with costs of the appeal.