## The Havilah.

### Pratt *v.* The Havilah.

*(Circuit Court of Appeals, Second Circuit. January 18, 1892.)*

1. Collision — Sailing Vessels Meeting — Free and Closehauled Courses — Lights.

   A brig and a schooner approached each other on a clear night, the brig sailing free on a course W. ½ N., and the schooner closehauled on an E. by N. course. On conflicting evidence the court found that the schooner held her course, except for a luff *in extremis*, continually exhibiting to the brig her green light, and that the red light of the brig was seen on the schooner's starboard bow some time before the collision. The brig collided with and sank the schooner. *Held*, that it was the duty of the brig, sailing free, to have avoided the schooner, sailing closehauled, and for her failure so to do the brig was in fault.

2. Damages — Expense of Raising Sunken Vessel — When not Allowed.

   The mere fact of a vessel's sinking by reason of a collision is not sufficient to warrant a finding that she and her cargo are a total loss; and where it appears probable that they may be raised without much expense, and the vessel repaired, owners are not allowed to insist upon damages, as for a total loss, when they have

not employed reasonable measures to mitigate the loss. But when a vessel worth $3,800 was sunk in deep water, and was afterwards raised at a cost of $1,900, and repairs were put upon her to the extent of $6,800, *held*, that the wrongdoer was liable only for the value of the ship, cargo, freight, and personal effects on board before the collision.

33 Fed. Rep. 875, reversed.

In Admiralty. Appeal from the circuit court of the United States for the southern district of New York, affirming *pro forma* a decree of the district court for said district. The latter court held the brig **Havilah** solely in fault for the collision, and claimants appealed. Modified.

*Henry D. Hotchkiss* and *Robert D. Benedict*, for appellants.

*Henry Arden*, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. On the morning of December 9, 1887, a collision occurred in Long Island sound, a few miles to the westward of Faulkner's island light, between the libelant's schooner, Helen Augusta, and the brig Havilah. The schooner was sailing before the collision, by the wind, on a course about east by north on the port tack, the wind being about north-northeast; the brig was sailing west-half-north, having the wind free. The vessels sighted each other just at the break of dawn, the breeze was moderate, the weather clear and good for seeing lights, and both vessels had their regulation lights burning. The brig struck the schooner on the starboard side, a little forward of the mainmast, and she went down soon after. The district court held the brig solely in fault for the collision. This decision was affirmed in the circuit court, and the claimants have appealed to this court.

We have reached the same conclusion as the district judge on this branch of the case, but the facts are so elaborately and carefully discussed in his opinion that it is unnecessary to rehearse them. As the brig was sailing free, and the schooner closehauled on the wind, the former is to be held responsible unless the collision was brought about by inevitable accident or by some fault of the schooner. Of inevitable accident, there is no suggestion. It is claimed, however, that the schooner changed her course to the northward and thus misled those who were in charge of the navigation of the Havilah, and that this change was made, not *in extremis*, when collision was inevitable, but was itself the cause of the collision, which but for such change would not have happened. The witnesses for the schooner insist that no such change was made; that they saw the brig's red light for several minutes before the collision off the schooner's starboard bow, and apprehended no collision until the brig came near, supposing the latter would avoid her. If the course of the schooner and the bearing of the brig were as testified to by libelant's witnesses, the brig could at no time have seen the schooner's red light, and, as a persistent green light would have indicated a sailing vessel hauled on the wind, it would be the brig's duty to avoid her. This testimony is flatly contradicted by the second mate and the lookout of the brig, who insist that they first saw the red light of the schooner, and then, after a brief interval when no lights were seen, her green one.

The testimony of the opposing witnesses is wholly irreconcilable. Error in those called from the brig, who did not see the light continuously, may be accounted for on the supposition that they mistook some other red light for that of the schooner; but if the evidence of those called from the schooner, who insist that they watched the brig's lights continuously till the time of collision, is false, it must be a deliberate fabrication. We concur with the district judge in believing that the schooner's witnesses told the truth when they asserted that, down to the time of collision, she exhibited to the brig only her green light; and that, except for a luffing up in the very jaws of the collision, there was no change of the schooner's course. For the resulting catastrophe, therefore, the brig is solely responsible.

There remains a question as to what is the measure of damage. There was a wide difference between the estimates of the witnesses who testified before the commissioner to the schooner's value before the collision. The weight of unbiased evidence, however, is strongly in support of his finding that her value then was $3,800. Her cargo was coal, worth about $1,200. She was 22 years old, and sank 2 minutes after collision, in the open sound in 100 feet of water. The libel alleges that she became a total loss. After the decision of the district judge, hearings began before a commissioner to take proof of damages, and proceeded till eight witnesses had been examined by the libelant, touching the value of the vessel before collision, on the theory of a total loss. Then, in April, 1888, four months after collision, libelants finally decided to raise her; an operation, which as his counsel testified, "involved much difficulty and hazard." After one wrecking company had declined to undertake it, they employed another, at an estimated price of $1,800 to $2,000, to do the work. Thereupon, but without giving any information as to such estimate or refusal, libelants' counsel, at one of the hearings before the commissioner, asked claimants' counsel to stipulate that the vessel was a total loss, which the latter declined to do. The vessel was raised by libelants at a cost of $1,900. Her value when raised was from $1,100 to $1,200, and such of the cargo as was raised sold in its damaged condition for $275. Libelants thereupon placed the vessel in the hands of a ship-builder near New Haven, without limit as to price, to be repaired and put in as good condition as she was before. The repairs cost $6,800. They claimed the cost of raising and of the repairs, with freight, demurrage, value of cargo, (less $275,) and personal effects, with interest on the several items. The commissioner allowed their claim, except that he reduced the repairs to $3,850, the value of the vessel before collision. The district court disallowed the demurrage, and adopted the commissioner's recommendations as to the other items. Claimants insist that they should be held only for the value of schooner, cargo, freight, and personal effects before collision. We think that is the correct measure of damage. It is no doubt true that the mere fact of sinking is not sufficient to warrant a finding that vessel or cargo is a total loss, (*The Baltimore*, 8 Wall. 377; *The Bristol*, 10 Blatchf. 537; *The Thomas P. Way*,

28 Fed. Rep. 526;) and where it appears probable that they may be raised without much expense, and the vessel repaired, owners are not allowed to insist upon damages, as for a total loss, where they have not employed reasonable measures to mitigate the loss.   So, too, allowance has been made for the cost of raising the sunken vessel, even though she was not subsequently repaired, when it was necessary to raise her in order to ascertain whether she should be abandoned as a total loss or not, and also whenever the owner is required to remove her as an obstruction to navigation.   *The Empress Eugenie*, 1 Lush. 139; *The Venus*, 17 Fed. Rep. 925; *The America*, 11 Blatchf. 485; *The Nebraska*, 3 Ben. 261; *The Mary Eveline*, 14 Blatchf. 497.   But in these cases the vessels were sunk in rivers or harbors or comparatively shallow water.   None are cited or have been found where, under circumstances similar to those in the case at bar, it has been held incumbent upon the owner to go to any expense for the purpose of raising her.   *The Columbus*, 3 W. Rob. 161; *The Falcon*, 19 Wall. 75; *The Franconia*, 16 Fed. Rep. 153; *The Scow*, 8 Ben. 181.   It is true that the averment in the libel that the schooner and cargo were a total loss was controverted by the answer; but upon the issue thus raised the proof in this case falls far short of that which in *The Baltimore*, *supra*, was held to warrant the conclusion that vessel and cargo might be raised without much expense.   A wrongdoer who has struck and sunk a vessel in deep water must show a very different case from this before he can insist that the duty of raising her should be imposed on her owners.   Nor did the refusal of claimants' counsel to stipulate that she was a total loss change the situation.   Whether they would or would not abandon was for the owners of the ship to determine.   Their knowledge of the true value of the ship, and of the estimated cost of raising her, supplied them with information material to the determination of that question, which was not in the possession of the other side, who by the request to stipulate were challenged to determine as to facts not known to them.   The decree of the circuit court should be reversed, and the case remanded to that court, with instructions to enter a decree for the libelants for the value of ship, cargo, freight, and personal effects, as found by the commissioner, with interest from December 14, 1887, the date of the probable termination of the voyage, and costs of the district court.   Disbursements of the circuit court and costs of this court to the claimants.