## THE GYPSUM PRINCE.

### HIGGINS et al. v. GYPSUM PACKET CO.

(Circuit Court of Appeals, Second Circuit. April 16, 1895.)

1. COLLISION—WEIGHT OF TESTIMONY.

The rule that testimony of witnesses as to what was done on board their own vessel is entitled to greater weight than that of witnesses on other boats, who judge merely from observation, does not mean that a vessel is to be held free from an alleged fault whenever her officers and crew testify that they did not commit it; but that when their evidence is given under circumstances calculated to bring out an independent story from each witness, and is direct, positive, consistent, and in accord with what would have been the natural course of events, it is not to be set aside because the testimony of observers upon other vessels as to the color and bearing of lights will not harmonize with it.

2. SAME—WEIGHT OF EVIDENCE ON APPEAL.

And, even upon an appeal in a case in which the district judge has seen and heard some of the witnesses, such testimony should still be accorded its proper weight, as against his conclusions, especially when his finding has been apparently induced in part by a misplacing of the testimony.

**3. SAME—BURDEN OF PROOF—PREPONDERANCE OF EVIDENCE.**

The vessel which was bound to keep out of the way has the burden of showing by a fair preponderance of proof that the collision was due to the fault of the other vessel.

**4. SAME—SAILING VESSELS.**

Where a schooner sailing free on the port tack, after several unavailing changes of course, collided with a schooner sailing closehauled on the starboard tack, *held*, upon the evidence, that the former had failed to sustain the burden resting upon her to show by a fair preponderance of proof that the latter changed her course. *Held*, therefore, that the former was solely in fault. 57 Fed. 859, reversed.

**5. ADMIRALTY APPEALS—RECORD.**

It is always desirable upon appeals in admiralty to have the record so prepared that it will show which witnesses were examined in the presence of the district judge, and which were not.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by Lewis H. Higgins and others, owners of the schooner George S. Tarbell, against the schooner Gypsum Prince, to recover damages resulting from a collision between the two vessels. The collision happened in the night, some time between 10 o'clock and 20 minutes after, at a place about six or seven miles from Vineyard Haven light-ship, off the coast of Massachusetts. The district court found that both vessels were in fault, and rendered a decree for half damages. 57 Fed. 859. The libelants appeal.

Eugene P. Carver, for appellants.

Harrington Putnam, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The night was clear, though overcast, and excellent for seeing lights. The lights on both vessels were properly set and burning. The wind was from N. W. to N. N. W. The Tarbell, loaded with plaster, was bound from Windsor, Nova Scotia, via Gloucester, to New York. She was sailing by the wind closehauled on the starboard tack. The Gypsum Prince was running free on the port tack, and, when the Tarbell was first sighted, was heading about E. ½ N. The Tarbell was therefore the privileged vessel, entitled to and indeed required to keep her course, while it was the duty of the Gypsum Prince to keep out of her way. The facts above stated are wholly undisputed, and for a collision happening under such circumstances the burdened vessel is to be held responsible, unless the collision was brought about by inevitable accident, or by some fault of the privileged vessel. The Havilah, 1 C. C. A. 520, 50 Fed. 331. No one contends that this was a case of inevitable accident, and two of the charges of fault made against the Tarbell in the answer—namely, that she had no lookout and no competent officer on deck—are wholly unsupported by proof. The case narrows down, then, to the question whether the Tarbell changed her course after the vessels sighted each other. That just before the collision the Tarbell hard a-ported her wheel, and luffed up to ease the blow, is

not disputable; but we concur with the district judge in the conclusion that such maneuver was in extremis, and should be disregarded. It remains, then, only to determine whether, except for the final luff, the Tarbell changed her course after sighting or being sighted by the Gypsum Prince. If she did not, then she cannot be held in fault; and the burdened vessel, which concededly made four changes in her helm after sighting, must be held responsible; for, in the absence of proof of inevitable accident, it must be presumed that her maneuvers proved unsuccessful because they were not appropriate to meet the situation, as the color and bearing of the lights of the privileged vessel should have shown her that it was.

Undoubtedly, as the district judge says, it is extremely difficult from the testimony to find any satisfactory and certain explanation of how and why the collision occurred. Finding that the theory of neither side as to the successive movements of both vessels harmonized with the testimony, he has with great care undertaken to trace out their respective courses from the time of sighting, so as to bring them together at the place and in the manner testified to. In some particulars his theory fits the evidence; in others it does not. It begins with the proposition that a change of heading in the Tarbell from W. to W. by N. was made after the vessels came in sight of each other, and in this respect it is in direct conflict with the evidence from that vessel, and supported only by the testimony of two witnesses from the Gypsum Prince as to the color and bearing of the lights they saw. "The established rule is that the testimony of officers and witnesses as to what was actually done on board of their own vessel is entitled to greater weight than that of witnesses on other boats, who judge or form opinions merely from observations." The Alexander Folsom, 3 C. C. A. 165, 52 Fed. 403. This does not mean that a vessel is to be held free from an alleged fault whenever her officers and crew testify that they did not commit it. But when their evidence is given under circumstances which are calculated to bring out an independent story from each witness, when it is in accord with what would have been the natural course of events, when it is direct and positive and consistent, it is a safe rule to follow that it shall not be set aside because the testimony of observers on the other vessel as to color and bearing of lights will not harmonize with it. And even on appeal, in a case where the district judge has seen and heard some of the witnesses, such testimony should still be accorded its proper weight, especially when, as in this case, his finding has been apparently in part induced by a misplacing of the testimony. The opinion shows that the district judge understood that an order given by the master, "if the wind started up, to keep her west by north," was given to the man who took the wheel at 10 o'clock (Peterson), when in fact the only testimony as to that order shows that it was given to the man who was at the wheel before 10 o'clock (Patterson). It will be sufficient to confine the rest of this discussion to that change of course, from W. to W. by N.,

as none other, except the one in extremis, is shown. And there is no necessity of undertaking out of the confusion, uncertainty, and contradictions of the entire body of testimony to plot out the course of both vessels from the time they sighted each other until the catastrophe. In every issue of fact which comes before a court one side or the other has the affirmative, and necessity long since prescribed the wholesome rule that, where the party holding the affirmative fails to maintain it by a fair preponderance of proof, the decision upon that issue must be adverse to him. As the burdened vessel, which made four changes of course to avoid the privileged vessel, and yet collided with her, the Gypsum Prince must be held in fault, unless she can maintain the affirmative of the issue whether or not the Tarbell changed her course; there being no other fault left in the case chargeable to the latter vessel. The only evidence in support of this charge of fault (a change of course by the Tarbell) is that of the lookout and the mate of the Gypsum Prince as to the lights they saw, and it need not be discussed, because, conceding, as the district judge finds, that they were observant and alert, it is, nevertheless, the testimony of observers only, and should not outweigh the testimony of the actors on the other vessel, if their testimony meets all the requirements above indicated.

The vessels were approaching each other with a combined speed of about 12 knots. A mile would therefore be traversed by them in five minutes, six miles in half an hour. The libel was filed December 9, 1892, and answer December 28, 1892. One of the witnesses from the Tarbell (the lookout, Stewart) was examined upon deposition in New York, January 7, 1893. The apostles indicate that Patterson and Peterson testified upon the trial, but it is averred in libelants' brief that they were examined separately, on different dates, upon deposition in Boston, and claimant's counsel conceded this to be so, since his brief asserts that only Higgins, the master, and Haskel, who was below until just before collision, were examined before the district judge. Incidentally, it may be noted that it is always desirable upon appeals in admiralty to have the record so prepared that it will show which witnesses were examined in the presence of the district judge and which were not. The Tarbell was close-hauled on the starboard tack, and was therefore entitled to right of way as against anything she was likely to meet (except an overtaken vessel), whether the vessel thus encountered were a steamer, a sailing vessel running free, or one closehauled on the port tack. She had passed Vineyard Haven light-ship. The course to be steered, if the wind allowed it, was W. by N., that being the regular course for Point Judith. Hatfield came on deck too late to testify to anything before the final change. Stewart testifies generally that "the Tarbell didn't change her course without she might keep a little closer to the wind"; but as he was the lookout, and not so placed as to be able to note slight changes of course, his evidence on the question at issue is, of no importance. He fixes the time of the collision at 10 o'clock, as near as he could judge, and testifies that he sighted the light of the Gypsum Prince a quarter of an hour be-

fore collision. Stewart is clearly in error as to the hour of collision, for the testimony is uniform from both vessels that 15 to 20 minutes elapsed between sighting and collision, and is equally uniform and positive that neither saw the other until after changing wheelsmen, —an event which occurred on the Tarbell at 10, and on the Gypsum Prince either at 10 or 5 minutes earlier. Shortly after 10 each vessel came in sight of the other, and the rules for navigating in the presence of an approaching vessel became operative.

Patterson, of the Tarbell, went to the wheel at 8, the vessel heading then about W. ½ N. The course given to him by the man he relieved was "by the wind, and, if he could, to head W. by N." Sometimes during his trick at the wheel she would go up to W. by N., and sometimes she fell off, but never as far as W. ½ S. The captain of the Tarbell testifies that about half an hour before the Gypsum Prince was reported, which would be from 25 to 15 minutes before 10 (not 10 o'clock, as the district judge gives it), he noticed the compass, and found the vessel heading about W., and gave instructions to the man at the wheel, "if the wind started up, to keep her W. by N." This is in accord with Patterson's testimony. The wind hauled more to the north, and the captain testifies that at the time of sighting she was heading W. by N. This is perhaps an inference of his, based upon the assumption that his orders to Patterson had been carried out as soon as the wind permitted; but not only is it a natural inference, but it is confirmed by the independent testimony of the new wheelsman, Peterson, who relieved Patterson at 10 o'clock. He says that, when he took the wheel, he was steering W. by N., that the captain gave him orders to steer W. by N., and at no time ordered him to steer closer by the wind, which is consistent with the other testimony that the order to work up into the true course (W. by N.) if the wind permitted was given to Patterson, and before 10 o'clock. As the wind was when Patterson took the wheel, he says he could have kept a good full sail with one point higher. He gives the course as W. by N. when the lookout reported the light, and insists, on direct and cross examination, that there was no change of course down to the collision. No weight is to be attached to the apparent inconsistency of his statement that the Tarbell was heading W. by N. when struck. He says that he received and obeyed the order to put the helm hard down (to port), given in extremis, and that she luffed up about a point, but that he did not look at the compass at that minute, and evidently means that the compass course he steered was unchanged from the moment of sighting till the catastrophe, although at the last moment the Tarbell's head was swung to starboard of that course, to ease the blow. Evidence given as this was, independently, at different times and places, and which is so positive, so entirely consistent, and in such conformity to what might be expected from the circumstances that the Tarbell was bound where a W. by N. course would take her, and was, within knowledge of all on board of her, privileged as against any other vessel she might encounter, cannot be wholly disregarded; and, if it be given the weight it is certainly entitled to, the preponderance of proof is clearly against any change of course by the Tarbell after her lights became

visible to the Gypsum Prince. As the latter was the burdened vessel, and her repeated changes of helm failed to take her out of the track of a privileged vessel, which is not shown to have committed a fault of navigation, she must be held solely responsible for the collision.

The decree of the district court is reversed, with costs, and the cause remitted, with instructions to decree in accordance with this opinion.