## THE RENO.

## UNION TRUST CO. OF ALBANY v. SMITH.

(Circuit Court of Appeals, Second Circuit. December 9, 1904.)

No. 54.

1. COLLISION—SINKING OF VESSEL—MEASURE OF DAMAGES.

The damages recoverable by the owner of a vessel sunk in collision, when she is a total loss, is her value and interest; and to this may be added the necessary expense of raising her, when that is necessary to determine whether or not she can be repaired advantageously; and, when she is sunk in a place where she is liable to be an obstruction to navigation, the expense of removing her may be added. If she was not a total loss, the measure of damages is the reasonable expense of raising and repairing her to an extent sufficient to put her in as good condition as she was before the collision; the burden being on the owner, in any case, to prove the extent of his loss.

[Ed. Note.—For cases in point. see vol. 10, Cent. Dig. Collision, §§ 283, 287.]

2. SAME.

The owner of a vessel sunk in collision had her raised and repaired, without any survey, or apparently in any way ascertaining whether she was worth the expense or the reasonable cost of putting her in as good condition as before the collision. *Held*, that evidence of the amount so expended did not furnish a measure of the damages recoverable from the offending vessel, and, it being shown that her value when she was sunk was far less than the amount so expended, that the recovery should be limited to such value, with interest.

Appeal from the District Court of the United States for the Northern District of New York.

See 121 Fed. 149.

J. A. Lawson, for appellant.
Worthington Frothingham, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. This appeal presents the single question whether the recovery awarded to the libelant for the loss ensuing from the collision of the tug Reno with the vessel of the libelant's testator, White, was excessive. The vessel was a small steamboat, more than 30 years old, which had been fitted up as a ferryboat, and was employed as such on the Hudson river between the city of Albany and that part of the city of Rensselaer nearly opposite. While on one of her regular trips she was sunk by a collision with the tug Reno, in about 12 feet of water, a short distance from her ferry slip on the Albany side of the river. The interlocutory decree adjudging the tug in fault for the collision ordered a reference to a commissioner to take proofs and ascertain the amount of the damage. Upon the hearing before the commissioner the proofs for the libelant were confined to evidence showing the amount expended by its testator, White, directly and incidentally, in raising and repairing the vessel. The commissioner found that the amount paid out in this behalf was $1,829.27, and he reported the damages at

this amount. After the proofs for the libelant were closed, evidence was introduced by the owner of the tug tending to show that the ferryboat at the date of the collision did not exceed $600 in value. In respect to this evidence the commissioner found as follows:

"The evidence offered as to the value of the ferryboat at the time of the collision is very unsatisfactory, so far as it aids in arriving at any definite amount. The libelant [White] purchased the vessel two years before the collision, and while she was beached at Tottenville, for $600. It appears that, after purchasing her, he raised her from the beach, took her to a dry dock, and made various repairs to hull and machinery, to get her in commission and prepared for the service of a ferry between Albany and Bath; but no evidence of the cost or value of this work was produced."

Rankin, the superintendent of the shipbuilding concern by which the repairs were made, testified that when the repairs were made her timbers and frame were badly decayed, her hull was practically rotten, and that he would not value her for more than $600—"only for what junk a man would sell her for"; but he did not profess to have any but a superficial knowledge of her machinery. Her machinery was not repaired at this time, and the repairs which were afterwards made to the machinery, though not detailed, seem to have been of an insignificant character. Barrett, a pilot, who was in command of her navigation for a time after she entered upon the ferry service between Albany and Bath, testified that the planking upon her hull seemed to be fairly good, from outside appearance, but the ribs were not good, and were rotten at the bottom; that her engines and boiler were in poor condition; and that, in his opinion, she was not worth more than $300. His cross-examination showed, however, that he had practically no knowledge of the market value of such vessels. No testimony was introduced for the libelant in rebuttal, except to show that she was estimated at $3,000 in the inventory of White's estate. This evidence was duly objected to, and, of course, was incompetent. Exceptions were filed to the commissioner's report by the claimant of the tug, insisting that the sum awarded was excessive, and should not have exceeded the value of the ferryboat at the time of the loss. The court below reduced the amount found by the commissioner to $1,549.19, but no opinion was rendered by the district judge. Apparently he disallowed some of the items which had been allowed by the commissioner, but it cannot be ascertained from the record what items these were.

The damages sustained by the owner of a vessel which is sunk in a collision, when the vessel is a total loss, is her value at the time of the loss, to which interest may be added to afford complete indemnity; and to this may also be added the necessary expenses of raising her, when that is necessary to determine whether she can be repaired advantageously; and when she is sunk in a place where she is liable to be an obstruction to navigation, the expenses of removing her may also be added. If she was not a total loss, then the measure of damages is the reasonable expense of raising and repairing her to an extent sufficient to put her in as good condition as she was before the collision. The burden is upon the owner to prove the amount of his loss, either by showing the vessel to have been a total loss, actually or constructively, or by showing the extent and cost of the necessary repairs and the incidental expenses. The Baltimore, 8 Wall. 377, 19 L. Ed. 463; The America,

11 Blatchf. 485, Fed. Cas. No. 285; The Havilah, 50 Fed. 331, 1 C. C. A. 519.

In the present case no survey was made to ascertain the amount of repairs necessary to reinstate the ferryboat to her previous condition, and there were no estimates of any kind, so far as appears. Apparently, without any preliminary investigation to ascertain whether she was worth raising and repairing, or what it would have cost to remove her or repair her, she was raised, removed, and repaired. The commissioner rejected many items of the expenditure asserted to have been made by the libelant's testator. Among those allowed by him were items aggregating about a thousand dollars for the expenses of raising the vessel and towing her to the place of repairs. It is almost incredible that any such amount was necessarily expended for these purposes, but the evidence that the amount was actually paid is uncontroverted. In view of the place where the vessel was sunk, it is fair to assume that it was necessary to remove her as an obstruction to navigation; but, in the absence of any evidence tending to show what it ought to have cost to do this, or to strip her of her machinery and destroy the hull, any allowance on this behalf would rest merely upon conjecture. The amount allowed for expenditures for repairs must be rejected, because there was no evidence of the extent of the repairs necessary to restore her to her previous condition. Upon all the evidence, we conclude that the contention for the appellant is well founded, and that, upon the most liberal view of the facts for the libelant, an award exceeding the value of the hull at the time of the loss, with interest, should not be allowed, and a recovery to that extent will afford ample indemnity to the libelant. The machinery was saved, and, if it needed any repairs to put it in as good condition as it was before the collision, no allowance can be made therefor, because no proof was offered respecting the necessary cost of such repairs, and for the same reason no allowance can be made for the necessary cost of saving the machinery.

The decree should be modified by reducing the damages to $600 and interest from the time of the collision. The appellant is entitled to costs of the appeal.

Ordered accordingly.