## PENNELL et al. v. UNITED STATES.

### THE WINOOSKI.

#### (District Court, D. Maine. June 22, 1908.)

#### No. 20.

**1.** COLLISION—DAMAGES—VALUE OF PROPERTY.

Evidence as to the value of a vessel and her equipment at the time she was sunk in collision considered.

**2.** SAME—DAMAGES RECOVERABLE—UNEARNED FREIGHT.

Unearned freight under a charter cannot be allowed to a vessel sunk in collision as damages, unless facts are shown from which the court can estimate the net freight with reasonable certainty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 282.]

**3.** UNITED STATES—CLAIMS AGAINST—INTEREST.

In view of the general rule that interest is not recoverable against the United States, and the statute prohibiting the allowance of interest against it by the Court of Claims, interest cannot be allowed by a court of admiralty on a claim for damages for the sinking of a vessel in collision by a United States gunboat, referred to such court by a special act of Congress, unless such act expressly authorizes it, and a provision that the proceedings, including "the measurement of damages," shall be the same as in other admiralty cases, cannot be considered such express authority.

In Admiralty. On certain questions relating to damages.

Bird & Bradley and Benj. Thompson, for petitioners.
Robert T. Whitehouse, for the United States.

HALE, District Judge. In a former opinion (162 Fed. 64) this court has held that the government steamer was in fault, and has ordered that a decree be entered for the petitioners.

At the request of the learned proctors for both parties, I have consented to pass upon certain questions relating to the damages.

1. What was the market value of the brig Olive Frances at the time of her loss on July 30, 1866?

The testimony shows that the Olive Frances was a hermaphrodite brig 110 feet long, 27 feet in width, 14 feet draft, and of a burden of $293^{23}/_{95}$ tons. She was built at East Machias, Me., in the season of 1864–1865, of mixed woods, with copper and iron fastenings. She was metaled and copper bottomed in August, 1865, classed at Lloyd's A 1½. From the testimony of one of her mates, Charles A. Wood, it appears that she was built chiefly of hard and soft pine, with spruce floorings, hardwood outer planking, and hackmatack knees; that her sails consisted of flying jib, outer jib and jib, fore staysail, foresail, fore topsail, topgallant sail and royal, main staysail, middle staysail, main topmast staysail, mainsail, gaff topsail, and three studding sails. It appears that this suit of sails had been in use from the time of her launching in 1865. In addition to these sails, she had a partial suit of sails which was about six months old. She had the usual tackle, apparel, and furniture, and some surplus rigging. The whole testimony shows that her hull and rigging were well kept up and were in good condition at the time of the collision.

There has been much conflicting testimony as to her value. I admitted certain testimony de bene upon the question of her value. But, in coming to my conclusion, I do not find it necessary to consider any of this evidence. I base my decision as to her value entirely upon the unchallenged testimony offered, and quite largely upon the testimony offered in behalf of the government.

Upon such evidence and on full consideration of the case I find her value at the time of the loss to have been $25,000.

2. I find the value of the ballast on board of her at the time of the loss to be $100.

3. What was the value of the provisions on board at the time of the loss?

The mates testified that she was fully supplied with provisions for the voyage. Capt. Humphrey, a shipmaster of great experience, has testified that it would require about $35 per week to provision the crew and passengers, and that it would take from six weeks to two months to perform the voyage upon which she had entered. She had been upon her voyage, however, about five days, and had, therefore, consumed a portion of the provisions. After deducting what she must have consumed, I estimate the value of her provisions at the time of her loss to have been $250.

4. Are the petitioners entitled to unearned freight for the voyage?

The testimony shows that, pursuant to a charter, the brig was proceeding to Glace Bay, on the island of Cape Breton, to procure a load of coal to deliver at Bath, Me. The evidence touching the charter is vague. It does not appear whether the charter was for the voyage, or for the season; nor how much was to be paid for the carriage of the coal per ton; nor the cost of completing the voyage; nor the wages of the crew; nor other expenses which it would be necessary to incur in order to earn freight. There are, therefore, before me no elements from which the net freight can be estimated. The court would be left to pure guessing as to what the unearned freight would have been.

Under the decisions of the federal courts a claim for unearned freight for the voyage might be allowed, if there had been sufficient proof to establish affirmatively what it would have been; but the elements to which I have referred are all wanting.

The Supreme Court has considered the claim of future profits of an unexpired charter in The Umbria, 166 U. S. 404, 423, 17 Sup. Ct. 610, 41 L. Ed. 1053. In the case of The Hope and Freddie L. Porter (D. C.) 5 Fed. 822, Judge Fox went to the fullest extent which the law permits in the allowance of pending freight. His decision was confirmed in The Freddie L. Porter (C. C.) 8 Fed. 170. But in the case before me there is not sufficient evidence to satisfactorily and affirmatively prove this claim. The claim for unearned freight is disallowed.

5. Petitioners seek to recover interest from the date of the collision on the value of the property lost.

They base their claim for interest upon the provisions of Act Feb. 24, 1905, c. 777, 33 Stat. p. 810. That act is as follows:

"That the claims of the owners and officers of the brig Olive Frances, of Machiasport, Maine, and others on board said brig, for damages and losses

sustained by reason of collision of the United States gunboat Winooski with said brig, on July thirtieth, Anno Domini eighteen hundred and sixty-six, be, and the same are hereby, referred for examination and adjudication to the District Court of the United States for the District of Maine; that said parties, or such of them as shall choose to join therein, may, at any time within twelve months from the final passage of this act, file in said court, a petition, which thereafter may be amended at the discretion of the court in the same way that other pleadings in said court are amendable, which petition shall set forth all the material facts upon which the said parties jointly or severally rely in support of their said claims; and the court shall thereupon order such notice to be given to the United States, or to its representatives, and such further proceedings to be had as to answers or other pleadings in said case as it shall deem proper; that in regard to the trial or hearing of said cause the same rules and modes of proceedings as to evidence, mode of trial, liability for damage, and measurement of damages, and otherwise, including the right of appeal, shall apply as in other causes of admiralty between individual owners of colliding vessels, and shall also be determined upon such legal or equitable principles as shall be applicable thereto; that said claims shall not be barred by any statute of limitations; and should it on the said trial or final hearing be determined that anything is due to the said parties, the said court shall render judgment therefor against the United States for the amounts so found to be due to them jointly or severally and certify the same to the Secretary of the Treasury of the United States for payment; and the sum necessary to pay the same is hereby appropriated out of any moneys in the treasury not otherwise appropriated."

It is argued that interest ought to be allowed upon this claim in this court by reason of the following provision of the above act:

"In regard to the trial or hearing of said cause the same rules and modes of proceedings as to evidence, mode of trial, liability for damage, the measurement of damages, and otherwise, including the right of appeal, shall apply as in other causes of admiralty between individual owners of colliding vessels, and shall also be determined upon such legal or equitable principles as shall be applicable thereto."

The learned proctor for the petitioners urges with zeal and learning that under the act this case is to be heard and determined upon the principles of an admiralty court; that interest is recognized as a part of the damages in courts of admiralty; that the principles of admiralty law call for complete restitution where the libelant is deprived of his property, as in the case at bar; that there can be no restitutio in integrum unless interest is allowed. In his comprehensive brief upon the subject, the learned counsel suggests that:

"Should the court allow merely the value of the vessel at the time of the collision in July, 1866, and refuse interest, it is tantamount to the allowance of interest at the rate of 2.4 per cent. upon its value for 41⅔ years (the period which has elapsed since the loss of the vessel), without any allowance of the principal sum, while the government meantime has had the use of the moneys."

He cites The Rabboni, 53 Fed. 948, 952, where, in the Circuit Court, Judge Putnam said:

"When not more than the value of the vessel and pending freight is given, interest should justly be added to give complete restitution."

It should further be said in reference to the case just cited that, while the appellate court reversed the decree in part, it substantially confirmed the opinion of the court below in reference to interest. Numerous other cases are cited where the same principle is applied. Mary J. Vaughan, Fed. Cas. No. 9217; The Alexandria, 10 Ben. 101, Fed.

Cas. No. 178; The America, 11 Blatch. 485, Fed. Cas. No. 285; The Reno, 134 Fed. 556, 67 C. C. A. 479; Union Trust Co. v. Smith, Id.

The question of the allowance of interest against the government has often arisen in suits in the Court of Claims; and in the Revised Statutes of the United States is found the following provision, in Rev. St. § 1091 (U. S. Comp. St. 1901, p. 747):

"No interest shall be allowed on any claim up to the time of rendition of judgment thereon by Court of Claims unless upon contract expressly stipulating for the payment of interest."

Tillson v. United States, 100 U. S. 43, 25 L. Ed. 543; Harvey v. United States, 113 U. S. 243, 5 Sup. Ct. 465, 28 L. Ed. 987; U. S. ex rel. Angarica v. Bayard, 127 U. S. 251, 8 Sup. Ct. 1156, 32 L. Ed. 159.

But the matter has not been confined to the decisions in suits which have arisen in the Court of Claims. As a general principle, it has become the established rule of the Supreme Court that interest is not allowed on claims against the government, whether such claims originate in contract or in tort, and whether they arise in the ordinary business of administration or under private acts of relief passed by Congress on special application. The only recognized exceptions to this rule are where the government stipulates to pay interest, and where interest is given expressly by act of Congress, either by the name of interest or under that of damages.

In Watts v. United States, 129 Fed. 222, 226, the District Court of the Southern District of New York passed upon a claim of interest against the government in a case which arose upon a special act providing that the claim of the owners of the British steamship Foscolia, destroyed through collision with a naval vessel, "may be submitted to the United States District Court for the Southern District of New York, under and in compliance with the rules of said court sitting as a court of admiralty." Interest had been disallowed by a commissioner; and, in passing on the exceptions to the commissioner's report, the court said:

"It is contended that the disallowance of interest is unjust and excludes the libelants from a full recovery of the damages sustained. Such appears to be the fact. Without interest, the recovery is only partial; but it is too well established to admit of argument that the government is not liable for interest on damage claims, in the absence of an express statutory provision or stipulation covering it. Bunton v. U. S. (C. C.) 62 Fed. 171; U. S. v. Sherman, 98 U. S. 565, 25 L. Ed. 235; Tillson v. U. S., 100 U. S. 43, 25 L. Ed. 543; Harvey v. U. S., 113 U. S. 243, 5 Sup. Ct. 465, 28 L. Ed. 987; Angarica v. Bayard, 127 U. S. 256, 8 Sup. Ct. 1156, 32 L. Ed. 159; U. S. v. North Carolina, 136 U. S. 211, 10 Sup. Ct. 920, 34 L. Ed. 336.

"Formerly Congress adjudicated upon private claims against the government, through its committees; but the great and increasing volume of claims necessitated some other method of providing for their investigation, and the Court of Claims was established for such purpose. * * *

"The claimants here, while conceding that, if the matter had been referred by Congress to the Court of Claims, interest would not be recoverable, urge that, as it has been sent to an admiralty court, which ordinarily allows interest as part of the damages, interest should be granted. The question turns upon the intention of Congress. It would seem that, under the authorities cited, interest is not allowable unless expressly provided for, and, there being

a complete absence of any allusion to interest in the act under which the action has been tried here, it should not be granted."

In the case at bar there is no allusion to interest in the statute under which the suit is brought, unless such reference may be found in the language which I have pointed out. After a careful study of the matter, I am constrained to hold that the intention of Congress was to prescribe merely that the case should be conducted as an admiralty case in an admiralty court, not as a common-law case in a common-law court, and that in the admiralty court it should be tried upon well-settled legal and equitable principles. In my opinion the statute cannot fairly be construed to show an express intention of Congress to allow interest upon this claim against the United States. The language of the act is not "an express statutory provision covering interest." It is not sufficient to authorize an allowance of interest. If, under the law, I could regard the allowance of interest as a matter of judicial discretion, the suggestions which I have quoted from the learned counsel for the petitioners would have great weight, and would strongly tend to persuade me to allow some interest. But the law precludes me from the exercise of discretion in the allowance of interest as a part of the damages in this case; and Congress has not made such express declaration upon the subject as to override the well-settled law of the federal courts.

The claim for interest is disallowed.

All other questions relating to the accounting and all other matters of damages are referred to William H. Gulliver, Esq., whom I appoint assessor in this case.