## THE NONPAREIL.*

### THE CENTRAL STATES.

#### WEEKS STEVEDORING CO., Inc., v. DALZELL et al.

District Court, S. D. New York.
Aug. 22, 1935.

Slayton & Jackson, of New York City, for libelant.

Burlingham, Veeder, Clark & Hupper, of New York City (Stanley R. Wright, of New York City, of counsel), for Fred B. Dalzell and Mutual Towing Co., Inc.

Thomas A. McDonald, of New York City, for claimant.

HULBERT, District Judge.

Libelant moves for an order overruling the exceptions by claimant, Mathiasen Towing Line, Inc., and Fred B. Dalzell, claim-

*Decree amended 12 F. Supp. 985.

ant, and Mutual Towing Company, Inc., respondent, and sustaining exceptions by the libelant, and in accordance therewith, for confirmation otherwise of the commissioner's report by this court.

Libelant was the owner of a scow and hoisting crane erected thereon known as "Weeks Crane No. 4."

As the result of a collision, the No. 4 was damaged, and being engaged at that time, some temporary makeshift repairs were made to enable her to continue her work. Subsequently a survey of the No. 4 was called for March 20, 1930, which was twelve days after the collision. Notice thereof was given to both Dalzell and Mathiasen, but only Dalzell was represented. The survey did not contain an agreement upon the price of the repairs and the owner of the No. 4 solicited and received bids from four repair yards, the lowest of which was $998. However, instead of making full repairs in accordance with the survey, the libelant requested, and the low bidder made, such repairs as the libelant could get along with and "keep her going," at a total cost of $430.55. These repairs consisted, in the main, of short pieces across the No. 4, instead of full length pieces as called for in the survey. The commissioner, nevertheless, allowed the full amount of the lowest bid and $40 towing charge, and disallowed all other claims of libelant.

A witness for claimant Dalzell testified that the sound value of the hull of No. 4, valued separately from her hoisting machinery, was $200 to $500, and that the depreciation in her sales value was $71, and it is the contention of claimant that the libelant's recovery should be limited to $430.55 plus $71 plus the towing charge of $40, or a total of $541.55.

In The Reno, 134 F. 555 (C. C. A. 2) the owner of a vessel which was proved to have been worth only $600 was raised and repaired after a collision at a total cost of $1,829.27. This amount was allowed by the commissioner. Exceptions were sustained and the award reduced to $600.

The claimant relies upon that authority.

In the instant case, about fourteen or fifteen years ago, the scow cost about $14,000 to build; the libelant paid $5,000 for the boat in 1928.

Upon this testimony the court cannot say that the commissioner was bound to accept the testimony of the witness McGrath as to the sound value of the hull. In

fact, it is very significant that upon the survey the representative of Dalzell agreed to the necessity of taking out the full planks all the way across the boat and replacing them, which was the major item in the estimation of the cost of repairs, while it is claimed the sound value was less than $998.

"One whose ship is wrongfully injured, as against the wrongdoer, may liquidate his damages by expert testimony alone, and never repair at all." Hough, J., in Pennsylvania R. Co. v. Downer Towing Corporation (C. C. A. 2) 11 F.(2d) 466, 467.

The report of the special commissioner will be confirmed. Settle order on notice.