**BROOKLYN EASTERN DIST. TERMINAL v. UNITED STATES.**

**UNITED STATES v. BROOKLYN EASTERN DIST. TERMINAL.**

No. 72.

Circuit Court of Appeals, Second Circuit.

Jan. 11, 1932.

George Z. Medalie, U. S. Atty., of New York City (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Bigham, Englar, Jones & Houston, of New York City (Leonard J. Matteson and Willard M. L. Robinson, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The only questions raised by this appeal are the amount of damages suffered by the libelant. Its tug, the Integrity, was injured by the collision, and both parties were held jointly liable. The commissioner to whom the computation of damages was referred made an award of six items, of which three are here in dispute. These were the "demurrage," which was fixed at $11,700; the settlement of a salvage claim at $1,250; the settlement of a death claim at $9,000. It will be more convenient to state the facts as to each item seriatim.

The libellant was engaged in the towage of car floats in New York Harbor and for this purpose kept three tugs in commission, of which the Integrity was one. Her injuries required her withdrawal and the allowance was for the reasonable hire of a substitute during the time she was in dry dock. The respondent does not object to the amount fixed as reasonable hire for the suppositious substitute, and, though there was some question whether the time during which the tug was kept out of commission was not unreasonably prolonged, in the view we take it is unnecessary to pass upon that question. The libellant did not in fact hire another tug to take the Integrity's place while she was away, but did all its business by working the other two overtime. The theory, which was successful before the commissioner and in the District Court, was that since the two were thus used in place of the Integrity, the situation fell within the "spare boat" cases, and that the reasonable hire of a tug of similar capacity was the proper measure. The Cayuga, 7 Blatchf. 385, Fed. Cas. No. 2,537, affirmed 14 Wall. 270, 20 L. Ed. 828; The Favorita, 18 Wall. 598, 21 L. Ed. 856; The Providence, 98 F. 133 (C. C. A. 1); New Haven Steam-Boat Co. v. The Mayor (D. C.) 36 F. 716; The Mediana, [1900] A. C. 113. However, even "spare" boats will not serve, if it be not shown that there was work for that which was injured [Newtown Creek Towing Co.

v. New York, 23 F.(2d) 486 (C. C. A. 2); The Priscilla (D. C.) 27 F.(2d) 921]; and in no event do we think that the doctrine applies when the time lost is made up by boats which are not maintained as "spares." The cases relied upon proceed on the notion that the expense incurred to meet just the situation which arises, is properly attributable to the accident, that being one of the contingencies that occasion the outlay. In the case at bar the other boats were not kept for that purpose; as to them the libellant was at exactly the same charges as it would have been had the Integrity remained in commission, except for any extra expenses of overtime which were not proved. In particular, the argument is that since each tug, as ordinarily operated, was free for part of the twenty-four hours, the "spare time" was the equivalent of a "spare tug," maintained only for a lay-off. Perhaps this might be sound, if it appeared that three tugs were kept in commission instead of two for that reason; but it does not. So far as the record shows, there was business enough for all, operated for as much of each day as libellant thought reasonable. Certainly we have no ground for saying that it was to constitute a reserve that they were not operated overtime; nothing else will serve. We think that the case falls within The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937, and The Glendola, 47 F.(2d) 206 (C. C. A. 2). This item we disallow.

■ The collision broke the Integrity adrift from a loaded car float in tow, and badly stove her in forward. It may be true that she could have brought her charge to safety, but her crew did not think so and abandoned the float in the Upper Bay in half a gale of wind with corresponding sea. The cars and their contents were worth about $127,000, and the float might well have collided with ships on the anchorage. The tug, "Agnes," took the vessel in tow and brought it to a safe berth in less than two hours' time, without appreciable risk to herself. For this salvage service the libellant settled with the "Agnes" for $1,250, and charged it in its bill of damages. Considering the amount at risk and the real danger, we will not interfere. A court might well have allowed as much in a salvage suit, and the District Judge having passed upon it as such, we see no reason to disturb it.

■ One of the Integrity's crew, either because he became frightened, or because he got orders from the master to abandon the tug, boarded the float as he saw the respondent's vessel bearing down upon his own. While running along its outboard footpath he was knocked overboard by the force of the collision and drowned. His administratrix recovered nine thousand dollars for his death from the libellant by a voluntary settlement. This is the third item in dispute, whose amount is agreed to have been reasonable. The respondent argues, however, that the death was not a proximate result of the collision and as such not chargeable to it; because the master's order to leave the tug was itself unwarranted, and "broke the causal chain," being an intervening act of negligence. In the first place it is by no means clear that the seaman did not of his own accord think it safer to board the float than to stay on board, or that the order had anything to do with his conduct. That, however, we may pass, because even if he was directed to do so, and if the order was negligent, we have frequently decided that it makes no difference, provided the intervening negligence was within those events reasonably to be anticipated. The George H. Jones (C. C. A.) 27 F.(2d) 665; Cleary Bros. v. Port Reading R. Co. (C. C. A.) 29 F.(2d) 495; Hansen v. E. I. Du Pont, etc., Co. (C. C. A.) 33 F.(2d) 94; The Glendola (C. C. A.) 47 F.(2d) 206. Here it plainly was. The respondent's vessel was large and came on without change in direction. Perhaps the master lost his head; certainly he abandoned the tug himself, probably in a panic. His order may have been unwise at the time; at least it turned out to be unnecessary, but it was the kind of thing which might happen to any crew and any master. The respondent's liability was not limited to injuries suffered by men of steady nerves; tugs in the harbor are as likely to be manned by timorous, as by fearless, seamen. The item was properly allowed.

Decree modified by disallowing the charge for demurrage and otherwise affirmed without costs.