## UNITED STATES v. OCEANIC S. S. NAV. CO., Limited.

### THE CELTIC.
### No. 238.

Circuit Court of Appeals, Second Circuit.
March 14, 1932.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Adrian J. O'Kane, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The libellant filed a libel in rem against the claimant's ship for a collision; the claimant, a cross-libel in personam against the libellant. The suits were consolidated and tried as one, and the court found both ships at fault and entered an interlocutory decree for half damages. After further proceedings it fixed the amounts, and entered a final decree from which the libellant appeals. The only point here in issue is as to the damages of the claimant for loss of passenger fares, resulting from the abandonment of her next voyage by its ship, The Celtic. Her bookings had been in part already made, which she could not perform, being laid up for repairs, and concededly she lost the profits which these would have brought her. So far as the booked passengers did not transship to her sister, the Baltic, also owned by the claimant, which sailed a week later, there is no dispute; the issue arises as to those whom the Baltic carried. The libellant argues that in so far as the Baltic earned profits from the transshipped passengers, the claimant lost nothing. The claimant replies that prospective passengers on the Baltic may have been lost on her voyage, because they found the only satisfactory accommodations already booked by the transshipped Celtic passengers, and were crowded out. Again, that in any event the two voyages were separate adventures, and that the libellant may not set off what the Baltic earned against what the Celtic lost. Finally, that the burden was on the libellant to show what were the profits made by the Baltic on the transshipped passengers.

The case was tried upon a stipulation, which so far as pertinent, was as follows: The Celtic sustained a daily net loss of $1,528.20, "less such portion, if any, of passenger fares earned by the Baltic by carrying passengers booked on the Celtic * * * as is determined by the court to be legally deductible from the Celtic's aforesaid detention." The libellant "contends that there should be deducted from the claim * * * the amount of the passenger fares collected by the steamship Baltic * * * for the carriage of passengers booked on the Celtic * * * while" the claimant "denies that the

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for appellant.

deduction is proper * * * and * * * this issue is left to the court for determination." The judge decided that as the ventures were separate, they could not be brought into hotchpot, and that besides, as the libellant had the burden of showing the Baltic's profits as a set-off to the prima facie loss, and had not done so, the amount fixed in the stipulation controlled. He therefore allowed without deduction the daily net loss as stipulated.

We are satisfied that there is no warrant for treating the two voyages as separate ventures; a gratuitous interposition, serving only to avoid the legal consequences of the relevant facts. Whatever the claimant recouped by booking the Celtic's passengers elsewhere it did not in fact lose, and by what theory it should be allowed to recover more, we fail to understand. The doctrine of the "spare boat" cases we have recently considered [Brooklyn Eastern District Terminal v. U. S. (C. C. A.) 54 F.(2d) 978]; it was clearly inapplicable to the facts at bar. Nor is The Scotland, 105 U. S. 24, 26 L. Ed. 1001; Id.; 118 U. S. 507, 6 S. Ct. 1174, 30 L. Ed. 153, in point. The only question there was as to what freights the lost ship had earned, not what was her owner's damage by the collision; the statute identifies the freight with the hull for purposes of limitation, a conception quite alien to the issues here.

▮▮ The claimant had the burden of proving its damages. Had it not appeared that the Baltic carried any of the booked passengers, it would have discharged this by proving that the Celtic could not carry them. As soon as it was shown that some transshipped —no matter how that came out—the loss was pro tanto thrown in doubt, for we cannot suppose that the Baltic got no profits from them. Thus the damages upon these passengers were not proved. The case is not one of a current mutual account, where one party has the burden on charges, the other on credits; the claimant must liquidate its damages. Again, we are to distinguish those cases where a tort-feasor seeks to abate the damages by showing that the injured party has not bestirred himself to hold down his loss. These presuppose that the loss has been shown; the tort-feasor avoids a liability, otherwise sufficiently proved, by showing an excuse in the injured party's breach of duty. But until the injured party proves the loss, no such necessity arises. There might have been presumptions arising in the course of the trial, had the case been tried, but they do not touch the eventual duty of proving the issue. That is what we are here concerned with. The possibility that passengers were crowded off the Baltic by earlier bookings of the Celtic's passengers, is relevant only as damages attributable to the collision. Perhaps they were; we may assume so. The train of events would in that case be thus. The collision forced Celtic passengers to the Baltic; their fares were not lost, it is true, but the result was to crowd out putative Baltic passengers. If that was not too remote a consequence of the collision, the consequent loss of profits by the Baltic would swell the damages due to the collision. Assuming so much, it must be proved like any other damages. It was not.

▮▮ So unless the stipulation changed the burden of proof as it normally lay, the claimant proved no damages as to any of the transshipped passengers. Its terms are not clear enough to do so; for, if the parties meant anything of the sort, they should have made it plain. The stipulation says only that the claimant "sustained" a loss "less such portion" of the Baltic fares as the court may determine "to be legally deductible." That does not prescribe that the libellant must prove the deductions; only that when the evidence is in, the court will decide how much is to be deducted. The stipulated damages were made conditional upon the court's decision as to what must come off; but the claimant must fulfil the condition. No doubt it is always a close question to decide whether a clause is a condition or a proviso; usually it is matter of form. But here any doubts should go against him who seeks to change the usual rule, especially when all the evidence was in his hands. The case is clearer as to the possible crowding out of Baltic's passengers. This was not only the merest speculation, but, as we have said, really an added item of damage. Clearly the stipulation did not cover it.

Since the case was tried for the most part upon the stipulation alone, it appears to us reasonable that the claimant should have an opportunity at a new hearing to supply the defects. Hence although we reverse the decree, the cause will be remanded with leave to put in further evidence. If this is not done, the damages must be recalculated to exclude all the Celtic's prospective profits from the transferred passengers. This is £697, reached as follows: The gross fares of the transshipped passengers were £2871; figured on the profits of a number of earlier voyages, the proportion of this which would have been realized as profits by the Celtic

was £ 697. This therefore represents, as nearly as is ascertainable, the lost profits on those passengers. As the claimant has not shown that this profit was really lost, it must abate so much. For this calculation we rely upon the Claimant's Exhibit G. A. H. 6, and the accompanying testimony.

Decree reversed and cause remanded for further proceedings in conformity with the foregoing.