## THE VENUS.

*(District Court, S. D. New York.* September 10, 1883.)

1. COLLISION—DAMAGES—TOTAL LOSS.

    Damages allowed for injuries to a vessel by collision cannot ordinarily exceed her value at the time of collision, *i. e.*, as for a total loss, with cost of raising, to determine her condition, or to remove her as an obstruction, where that is necessary. To recover more, where the vessel has been repaired instead of being abandoned, special circumstances must be shown proving that the excess accrued notwithstanding the exercise of good faith and ordinary prudence and good judgment in repairing.

2. SAME—DEMURRAGE.

    Compensation as for demurrage while the vessel is undergoing repairs cannot exceed the clear net value of the use of the vessel, excluding all charges and expenses; and, when charged for a long and continuous period, it must bear some reasonable proportion to the value of the vessel. For a canal-boat worth $1,350, an allowance was made of $3 per day for 59 days.

3. SAME—EXPENSE OF RAISING—REPAIRS.

    Where the owner was advised to abandon as a total loss, but repaired the vessel and claimed, besides expense of raising, $1,028 for repairs, $584 for demurrage, and $300 difference between new and old, and got no estimates before repairing, nor contracted for any limit of the time for repairing, and claimed $5 per day for a detention of 73 days, *held*, that he had not shown ordinary prudence or good judgment in repairing, and the excess of the above three items, being $562 over the value of the boat, as a total loss, at the time of the collision, was at his own risk and charge, and should not be allowed.

4. SAME—CHARGES FOR BENEFIT OF INSURER.

    Charges made for the benefit of the insurer only cannot be allowed.

Exceptions to Commissioner's Report.

*Edward D. McCarthy*, for libelant.

*Beebe, Wilcox & Hobbs*, for claimants.

BROWN, J. The Venus having been found solely in fault for the sinking of the canal-boat Midland, (16 FED. REP. 792,) the commissioner, to whom it was referred to ascertain and compute the damages to the libelant, has reported the following items:

| | |
|---|---:|
| 1. Cost of raising the boat, | $  260  00 |
| 2. Repairs of the Midland, | 1,028  00 |
| 3. Amount paid Preston by the underwriters for traveling expenses while caring for the submerged property, | 43  75 |
| 4. Captain's furniture, etc., | 75  00 |
| 5. Gross freight, $420; less tolls and towing, $146.28; net, | 273  72 |
| 6. Demurrage, 73 days @ $8 per day, | 584  00 |
| 7. Difference between old and new, | 300  00 |
| Amounting, with interest, to | $2,895  85 |

Exceptions have been filed to all of the above items except 1, 2, and 4, and also for the allowance of interest on demurrage. The testimony before the commissioner showed that the highest estimated value of the Midland, at the time she was sunk, by the libelant's witnesses, was $1,500. The claimants' witnesses, who testified from a description of the boat, and not from personal acquaintance with her, estimated her value at from $800 to $1,000, only. The amount reported by the commissioner as damages under items 2, 6, and 7,— that is, for the cost of repairs, demurrage, and difference between the former and present value,—is $1,912; that is, $412 in excess of the highest estimate of the value of the Midland just before she was sunk, exclusive of $260, cost of raising.

The ordinary rule would not admit of a recovery beyond the amount of a total loss, i. e., the full value of the vessel at the time she was sunk. To this, however, may plainly be added the cost of raising the boat when that is necessary in order to ascertain whether she should be abandoned as a total loss or repaired; and, also, whenever the owner is required, as in this case, to remove her as an obstruction to the canal. When, in addition to this, however, the final claim of damage exceeds the full value of the vessel at the time of the loss, the claim should be carefully scrutinized, and the libelant held bound to show special circumstances to justify any such excess, and that good faith and reasonable prudence and good judgment have been exercised in making the repairs.

In the present case, as in that of The Glaucus, 1 Low. 366, a considerable part of the amount allowed is for demurrage during the repair of the vessel. In that case, however, special circumstances, which could not be foreseen, were shown to have occasioned the excessive amount of damage.

Restitution for the loss, and no more, is the rule in these cases. The Baltimore, 8 Wall. 386; The Bristol, 10 Blatchf. 538; Swift v. Brownell, 1 Holmes, 470. Payment of the full value of the vessel, with interest from the time of the loss, together with the expenses of removal, where that is required or is necessary for the purpose of

determining whether to abandon her or not, is full restitution; and a special and exceptional case must be made, showing that the excess accrued notwithstanding the exercise of good faith, prudence, and good judgment, in order to justify any claims beyond these.

In the present case the libelant was advised by one of his own witnesses, after raising the boat, to abandon her as a total loss. In proceeding to repair her he took no precaution to obtain previous estimates of the cost, or to limit the period of making the repairs by any contract which might restrict the loss through demurrage. Any prudent owner proposing to repair a boat at his own cost, with charges for every day's detention, would not neglect such precautions in a case of so doubtful expediency in repairing. I see nothing in the circumstances to excuse the libelant for neglecting this duty; and the excess should, therefore, be charged to his own risk and cost.

The general features of the case, moreover, do not give a favorable impression of the amount of the claim. By sinking, the boat's seams were swollen and bulged, and on this account, partly, a considerable item—$300—is claimed as the difference between new and old. Whatever foundation there is for this claim could have been foreseen from the beginning. The long period of 73 days, also, for demurrage, is not satisfactorily accounted for; and the extraordinary demand of $8 per day for this long period, net and clear of all charges, risks, and expenses, for a boat not claimed to have been worth more than $1,500,—i. e., demurrage at the rate of nearly $3,000 per year, or nearly $1,500 if during half the year she was laid up and could not be used at all,—is so obviously out of all proportion to the value of the boat that it cannot be seriously entertained, and it necessarily detracts from the credit to be given to other parts of the libelant's claim. Upon all the evidence of the libelant and the claimants as to the value of the Midland, I think $1,350 as much as ought to be allowed for her value as a total loss.

Upon this view, the sum of $562, on account of the hull, should be deducted from the report.

If the last two items reported, however, were regarded independently, about the same deduction should be made. Of the 73 days for which demurrage is charged, 14 are entirely unaccounted for, leaving 59 days—a long period, certainly—for raising the boat and doing repairs of the value of only $1,028. I am satisfied that $3 per day is ample, if not more than ample, allowance by way of demurrage for this long and continuous period. Grossly exaggerated claims on this ground seem to be the rule in such cases. See opinion in The Excelsior on damages, July, 1883, ante, 924. Nothing should be allowed as demurrage beyond the clear net value of the boat's use free of all charges and expenses. The claimant's evidence states a fair rate to be $3 to $5 a day; the libelant's witnesses say $8. If the canal-boat could get employment only six months in the year,—which is not the fact,—the demurrage would amount at the

latter rate to nearly $1,500 a year, *i. e.*, to her whole value or over. Such a claim appears to me to be inadmissible upon its face for a long and continuous period. It was claimed that at this particular time of the year boats were in demand and rates high. Such grounds for excessive rates, if not required to be specially pleaded, as in the nature of special damage, should at least be closely scrutinized. In this case, however, the bill of lading, upon the very trip when the Midland was sunk, shows that, deducting the expenses stated upon its face, and $25 additional river towage, the boat would have cleared on the most profitable part of her trip, viz., the down trip, only about $3 a day; and it is not clear that even this does not include the captain's wages.

At three dollars per day, for 59 days, the demurrage would amount to $177, or $407 less than the amount reported; and for the difference between the new and old value I should not be satisfied, upon the whole evidence, to allow more than $150. The result of these is about the same as allowing the value of the vessel at $1,350 as a total loss, excluding items 6 and 7. The third item, of $43.75, was an item for the benefit of the insurers, and, so far as I can perceive, was in no way obligatory upon the claimant to pay.

In arriving at the net freight,—that is, the net amount which would have been earned by the Midland had she finished her trip,—all the expenses, tolls, and towing, which she must pay in order to finish her trip, must be deducted from gross freight. These are mostly stated in the bill of lading, and reduce the amount to $99.98, from which, as I understand from the evidence, a further amount of $25 for river towage is also to be deducted, which would leave $74.98. To this, however, should be added such expenses and other charges as had already accrued up to the time the Midland was sunk; and these, apportioned as nearly as I can make them out, with the net freight last stated, amount to $201.98, which should be allowed for this item, instead of $273.72.

I allow, therefore, the following items:

| | |
|---|---|
| Cost of raising the boat, - - - - - | $260 00 |
| Captain's furniture, etc., - - - - - - | 75 00 |
| Net freight, etc., - - - - - - - | 201 98 |
| Value of vessel when sunk; or repairs, with demurrage, and $150 difference in value corrected as above, - - | 1,350 00 |
| | $1,886 98 |
| Interest from August 13, 1880, to this date, - - | 348 10 |
| Twenty-two hundred and thirty-five 8-100 dollars. Total, | $2,235 08 |