O'BRIEN BROS., Inc., v. THE HELEN B. MORAN et al.

No. 84, Docket 20354.

Circuit Court of Appeals, Second Circuit.

March 28, 1947.

J. Vincent Keogh, U. S. Atty., of New York City (Vincent A. Catoggio, Jr., Sp. Asst. to the U. S. Atty., of New York City, of counsel), for the United States.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On December 17, 1942 while the tug Helen B. Moran was towing the libellant's lighter Dayton from the slip between Piers 8 and 9 bound for Brooklyn the United States Navy tug collided with the lighter and caused the latter to sink within a few minutes after she had been towed back into the slip. The libellant thereafter filed a libel against the tug Helen B. Moran and her owner which as against those parties was dismissed by consent. Thereupon the cause was left to proceed against the United States which had been impleaded and consented to an interlocutory decree awarding to libellant 80% of its damages arising out of the collision, the computation of which was referred to a Commissioner. The Commissioner found the damages to be $61,021.59, 80% of which amounted to $48,817.27. That percentage of the amount of damages found was the limit of the amount allowable under the terms of the interlocutory decree. From a final decree confirming the report of the Commissioner, the United States appeals.

The question is whether the amount of damages awarded to the libellant was established by the evidence. In our opinion the libellant failed to prove the amount of damages awarded by the decree, which accordingly should be reversed.

The United States introduced evidence to the effect that the value of the barge at the time of the collision was $15,000 to $16,000. The libellant showed what the repairs had cost and what hire it received for its barge. While the net of $101.85 per day, and an apparent likelihood of prolonged use, were some evidence of a greater value than $16,000, the United States introduced evidence that a similar barge could have been built new for $33,000 and that upon such an assumed cost there should be allowed a depreciation of $17,800 in order to obtain a proper valuation of a barge that was twelve years old at the time of the collision, as was the Dayton. The actual cost of the Dayton according to books of the libellant was $44,653, and the depreciation taken on the books was $28,212, leaving a book value of $16,441. Yet the Commissioner and the District Judge allowed $7,732.21 for expenses of raising the wreck, $37,014.99 for repairs, $6,230.23 for repairs still to be made, $3,423.91 for miscellaneous items of damage, and $6,620.25 for demurrage, making a total of $61,021.59, upon which the 80% allowed under the provision of the interlocutory decree was based, or a net of $48,817.27.

In The Reno, 2 Cir., 134 F. 555, 556, the owner of a vessel sunk in a collision had her raised and repaired. In a suit to recover damages for the collision this court, in an opinion by Judge Wallace, set forth the rule to be applied in such cases as follows:

504

"The damages sustained by the owner of a vessel which is sunk in a collision, when the vessel is a total loss, is her value at the time of the loss, to which interest may be added to afford complete indemnity; and to this may also be added the necessary expenses of raising her, when that is necessary to determine whether she can be repaired advantageously; and when she is sunk in a place where she is liable to be an obstruction to navigation, the expenses of removing her may also be added. If she was not a total loss, then the measure of damages is the reasonable expense of raising and repairing her to an extent sufficient to put her in as good condition as she was before the collision. The burden is upon the owner to prove the amount of his loss, either by showing the vessel to have been a total loss, actually or constructively, or by showing the extent and cost of the necessary repairs and the incidental expenses."

In The Havilah, 2 Cir., 50 F. 331, in an opinion by Judge Lacombe, in which Judge Wallace concurred, this court held that where a vessel worth $3,800 was sunk and then raised at a cost of $1,900, and thereafter repaired at a cost of $6,800, the wrongdoer was liable only for the value of the ship, cargo, freight and personal effects which were on board before the collision and not for the cost of repairs except in so far as they did not exceed the foregoing value.

The effect of both of the above decisions was to limit recovery of damages arising from a collision to the actual loss suffered, and not to allow to the injured party expenses of repair exceeding that limit.

The Commissioner appointed under the interlocutory decree for the ascertainment of the damages suffered by the libellant reported that: (1) The Dayton was not a total loss because she was capable of being repaired and was repaired; (2) The doctrine that a vessel owner may not spend on the repair of his vessel more than the amount for which a comparable or similar vessel can be purchased in the open market is based on the obligation of the party who has been wronged to minimize damages and there was no evidence indicating that the libellant could buy in an open market another vessel comparable to the Dayton for less than the cost of the repairs; (3) Under conditions existing at the time of the collision, the value of the Dayton greatly exceeded the sum of $16,000, and it was doubtful whether a seller of a lighter comparable to the Dayton, and in reasonably good condition, could have been found; (4) The burden of proving that the value did not exceed $16,000 was on the United States.

For the foregoing reasons the Commissioner held that the Dayton's worth was substantially in excess of $16,000 (the respondent's figure) and thereupon allowed 80% of the sum of $61,021.59, or a net of $48,817.27 as the amount of damages.

One of the principal reasons for the Commissioner's estimate of damages caused by the sinking of the Dayton was founded on the statement of Justice Grier in The Granite State, 3 Wall. 310, 70 U.S. 310, 314, 18 L.Ed. 179, that: "when the injured vessel is not a total loss, and is capable of being repaired and restored to her original situation, the cost necessary to such repair cannot be said to be an incorrect rule of Damages." However, in The Baltimore, 8 Wall. 377, 75 U.S. 377, 387, 19 L.Ed. 463, Justice Clifford said that: "Persons injured in their property by collision are entitled to full indemnity for their loss, but the respondents are not liable for such damages as might have been reasonably avoided by the exercise of ordinary skill and diligence, after the collision, on the part of those in charge of the injured ship."

 In our opinion the holding of the Commissioner that the respondent had the burden of proving that the value of the barge at the time of the collision did not exceed $16,000 was erroneous. The court adopted that view because it considered that the sole issue was one concerning the duty of an injured party to "minimize damages." But that duty only applies in dealing with expenditures that should be allowed if found to be reasonable under the circumstances. It does not affect the ordinary rule that an injured party has the burden of proving the damages he has

actually suffered. United States v. The Oceanic SS. Nav. Co., 2 Cir., 56 F.2d 764, 766. Here the libellant has merely shown what he has paid out for repairs and attendant expenses, while the respondent has shown, without contradiction, that those sums were expended on a vessel that was worth much less than the expenditures. It seems quite evident that the real loss involved no such amount if in fact the value of the vessel at the time of the collision was less than the sums expended to restore her to service.

Pound, Ch. J., in the New York Court of Appeals, discussed the principles involved where an automobile was injured in a collision and the repairs were found to cost more than the vehicle was worth. He stated a rule, which the decisions we have already quoted show to be equally applicable to vessels injured through collision on maritime waters, as follows:

"The damages sustained by an automobile in a collision may be established by showing the reasonable cost of the repairs necessary to restore it to its former condition, although the general rule is that the measure of damages to personal property is the difference between its market value immediately before and immediately after the injury. This rule is subject to the limitation, first, that the cost of repairs must be less than the diminution in market value due to the injury, and, secondly, that the repairs must never exceed the value of the automobile itself as it was before the injury. The plaintiff should not benefit by the loss. Hartshorn v. Chaddock, 135 N.Y. 116, 31 N.E. 997, 17 L.R.A. 426; Hintz v. Roberts, 98 N.J.L. 768, 121 A. 711; Miller v. Pathe Freres, 81 N.J.L. 341, 79 A. 1062; Coffin v. Laskau, 89 Conn. 325, 330, 94 A. 370, L.R.A.1915E, 959; Southern Ry. in Kentucky v. Kentucky Grocery Co., 166 Ky. 94, 178 S.W. 1162; Robson v. Zumstein Taxicab Co., 198 Ky. 365, 248 S.W. 872; Bader v. Marlin, 160 Wash. 460, 295 P. 160, 78 A.L.R. 914. Where the automobile is totally destroyed, the measure of damages is its reasonable market value immediately before destruction. There can be no recovery beyond such value for mere repairs." Gass v. Agate Ice Cream, Inc., 264 N.Y. 141, 143, 190 N.E. 323, 324.

The libellant did show the extent of necessary repairs and their cost. That may be regarded as prima facie proof of the extent of damage to the barge for the reason that, in the absence of other evidence, it is reasonable to infer that it would not have made such expenditures if it could have recouped its loss otherwise. But it is only prima facie proof and was met by respondent's testimony that the ship after deduction of proper depreciation was only worth about $16,000. The libellant should have met this evidence by showing not merely that the worth was greater but what it actually was. This might have been founded upon (a) a capitalization of earning capacity, (b) the cost of a barge of a similar type in the open market, (c) the cost of constructing a new barge if that was feasible. In each case—i. e., of (a), (b) and (c)—there should be a deduction of proper depreciation due to the age and deterioration of the vessel involved in the collision. The least of these alternatives would furnish the measure of recovery because of the duty of the injured party to minimize damages.

It would seem to follow from the foregoing that the District Court should make a finding of the value of the barge at the time of the collision and if that value was less than the reasonable expenses of repair should allow that value as damages, but, if greater, should allow the sums previously adjudicated, provided they be found reasonable in amount.

It was agreed by both parties that there was no open market at the time of the collision, and thus standard (b) could not be applied. The Commissioner made no finding as to standard (a) except to the effect that the value of the lighter based on its earning power was greater than $16,000. The only evidence as to standard (c) was introduced by respondent, but was deemed irrelevant by the Commissioner because, as he said, there was not a total loss. However, to determine whether or not the vessel should reasonably have been treated as a total loss, it was necessary to compare the estimated cost of repairs with

the lowest valuation set by standards (a), (b) and (c). If the lowest valuation was lower than the cost of necessary repairs, then the vessel should have been regarded as a total loss and the lowest valuation set by the standards (a), (b) and (c) would properly be deemed the measure of damages. Cf. Gass v. Agate Ice Cream, Inc., supra. See also "The Empress Eugenie," Lush. 138; 167 Eng.Rep. 66.

■ If the value of the damaged vessel prove to be greater than the reasonable cost of the repairs, the cost should be allowed as well as any demurrage occasioned by the reasonable time consumed in making the repairs. Such is the rule in the case of what is termed a partial loss. The Umbria, 166 U.S. 404, 421–422, 17 S.Ct. 610, 41 L.Ed. 1053; The President Madison, 9 Cir., 91 F.2d 835, 846. See also opinion of Dr. Lushington in the "Columbus," 3 W. Rob. 158; 166 Eng.Rep. 922; also the opinion of Scrutton, L. J., in The Edison [1932] P. 52; 42 Lloyd, L.R. 23. If, on the contrary, the value of the damaged vessel should prove to be less than the reasonable cost of the repairs there would be a constructive total loss and the damages would be the value of the vessel at the time of the collision less any value of the wreck as salvage, without any allowance of demurrage, but only interest on the net amount from the date of the collision. See The Umbria, 166 U.S. 404, 421-422, 17 S.Ct. 610, 41 L.Ed. 1053; The Amiable Nancy, 3 Wheat. 546, 560–561, 4 L.Ed. 456, and the other decisions last cited. In the case of a claim against the United States interest can only run from the date of judgment. 46 U.S.C.A. § 782; cf. Boston Sand & Gravel Co. v. United States, 278 U.S. 41, 49 S.Ct. 52, 73 L.Ed. 170.

■■ At most, in case of a constructive total loss, only the anticipated profits of the particular voyage upon which the Dayton was engaged at the time of the collision could have been recovered as demurrage. In such a case, the Supreme Court has limited the anticipated profits recoverable holding that "if the vessel were under a charter which had months or years to run, the allowance of the probable profits of such charter might work a great practical injustice to the owner of the vessel causing the injury." The Umbria, 166 U.S. 404, 422, 17 S.Ct. 610, 617, 41 L.Ed. 1053, affirming Fabre v. Cunard S. S. Co., 2 Cir., 53 F. 288, 293. In the case at bar, the charter of the Dayton apparently had an indefinite time to run, while the service in carrying any given cargo was a day to day affair and everything due for the day on which the accident occurred was paid. In such circumstances it seems clear that in case of a constructive total loss nothing in the way of demurrage should be granted to the libellant.

■ The expenses of raising the barge were properly allowed inasmuch as she had to be raised in order to ascertain the extent of the damage and to remove her as an obstacle to the use of the slip in which she was sunk as a result of the collision. We hold that all of the sums allowed, except the cost of repairs and demurrage, were proper items of damage. We hold the cost of repairs and demurrage can only be allowed if such cost of repairs did not exceed the value of the barge at the time of the collision. That value must be established upon a further hearing in the District Court. In the event that the reasonable cost of repairs did not exceed the value of the barge at the time of the collision such cost may be allowed and demurrage for such reasonable time as might be necessary to make proper restoration. It is to be borne in mind that the record indicates a close relation between the libellant and the repair company so that the cost of the repairs should be carefully scrutinized and only what would be a fair amount should be allowed.

Criticism is made of the Commissioner's report because of what appellant regards as undue weight given by the Commissioner to the testimony of the libellant's paid expert, Captain DeMars, who was described by respondent as an "ardent advocate." He seems to have been an experienced marine surveyor and we should make no comment on the weight accorded to his testimony by the court below were it not for the following unfortunate remarks made by the Commissioner in his report:

"A witness in Captain DeMars' position cannot be any more criticized for being an 'ardent advocate' than can an attorney, a counsellor, an advocate, or a proctor whose duty it is to advance and protect his client's interests—providing always that the testimony which the witness gives represents his honest opinion and judgment."

■ A witness under oath, whether an expert or not, should testify with truth, restraint and fairness. It was erroneous for the Commissioner to justify ardent advocacy on the part of DeMars, or to liken his situation as a witness to that of a person only acting "to advance and protect his client's interest." It may be that the Commissioner, who evidently had confidence in DeMars' judgment as an expert, was naturally irked by what he regarded as unjust criticism. But however that may be, the remarks which we have quoted from the report were certainly unfortunate and likely to be misunderstood. Indeed, the comment that DeMars was justified in being an "ardent advocate" if he gave "his honest opinion and judgment" left the weight properly to be given to his testimony a matter open to misunderstanding even in view of the final clause about "his honest opinion and judgment." Upon the rehearing of the cause which we are directing the testimony of DeMars should be viewed in the light of an expert who has been employed by one of the parties.

The decree is reversed and the cause remanded with directions to proceed to determine the amount of damages upon the present record and such further competent evidence as the parties may introduce and in accordance with the foregoing opinion. The final decree to be entered shall allow all items of damage heretofore allowed except those attributed to the loss of the barge itself and except demurrage during a reasonable time consumed in making repairs if the value of the barge prior to the collision shall be found to be less than the reasonable cost of repairs. Whatever amount is finally allowed as the total damage is, of course, subject to reduction in the final decree to 80% under the provisions of the interlocutory consent decree.

Decree accordingly.