Petition of SUN OIL COMPANY, as owner of TANK SHIP ATLANTIC SUN, for exoneration from and limitation of liability

v.

HUMBLE OIL AND REFINING CO., Claimant, Appellant.

No. 17870.

United States Court of Appeals, Third Circuit.

Argued Jan. 9, 1970.

Reargued June 23, 1970.

Decided Oct. 2, 1970.

Rehearing Denied Oct. 22, 1970.

Seitz, Circuit Judge, concurred in affirmance.

James F. Young, Krusen, Evans & Byrne, Philadelphia, Pa. (Raymond T. Letulle, Philadelphia, Pa., on the brief) for appellant.

Richard W. Palmer, Rawle & Henderson, Philadelphia, Pa., for appellee.

Before BIGGS, VAN DUSEN and ALDISERT, Circuit Judges.

Reargued before HASTIE, Chief Judge, and SEITZ and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

Scattered on this record is the factual debris that remains when, unfortunately, two ships do not pass silently in the night. The collision on December 16, 1962, between the *SS Atlantic Sun* and the *SS Esso New York,* both loaded tankers, resulted in the filing of claims by the owners of both vessels. Following an extended trial, the district court determined that the *Sun* "did all that could reasonably and prudently be done, under the circumstances, to avoid the collision," and granted Sun Oil Company exoneration from liability. The *Esso* was held solely responsible and Humble Oil and Refining Company was assessed damages in the amount of $407,093.55. This appeal followed.

On the morning of the collision, the *Sun* was bound for the open sea, leaving the Delaware River channel and proceeding down the Delaware Bay on a constant course of 157°. The inbound *Esso* was proceeding up the Bay at a course varying between 350° and 003°, having navigated on the west side of the river channel opening in order to take aboard a river pilot at Lewes, Delaware. At approximately 0901, when the vessels were roughly three miles apart, the *Sun* detected the *Esso* on her radar. Her master concluded that the ships would pass safely starboard-to-starboard if the *Sun* maintained the 157° bearing. There was logic to the expectation of starboard-to-starboard passing: *Sun* was on a southeastward heading; *Esso* was coming from the west shore and was pro-

ceeding northwardly, making for the channel entrance.

By 0906 the vessels had closed to approximately one mile of each other. Radar observations by the *Sun* confirmed her earlier belief in the safety of a starboard-to-starboard passing, and subsequent visual sightings allegedly substantiated this belief. At 0906.2, however, the *Esso* began moving east of 360°, a movement presumably designed to emphasize the pilot's belief that a port-to-port passing should be executed. This gradual shifting of course was observed by the *Sun*.

At 0907, the master of the *Sun*, deciding that a safe starboard-to-starboard passing was no longer possible due to the *Esso's* change of course, ordered a 10° right rudder in order to execute a port-to-port passing. Ten seconds later a 20° right rudder was ordered. Before these course changes were seen by those on the bridge of the *Esso*, however, the *Esso*, at 0907.2 or .3, began to check its right swing and come slowly left. By 0907.5, before *Esso's* right swing was entirely checked, it had reached a bearing of 010° which was perceptible to the *Sun*. Within the next thirty seconds the *Esso's* left rudder brought her to 008.4° but this 1.6° course change was not discernible to the *Sun*.

By 0908, therefore, the inbound *Esso* with engines full ahead was swinging left at 14.2 knots. The outbound *Sun* was swinging right at 11.7 knots, having moved 14° from its 157° bearing to 171°. At this time the *Sun* went hard right rudder and the *Esso* began hard left, and both vessels were *in extremis* and on a collision course. Approximately one minute later the *Sun* sounded her danger signal and ordered her engines full astern. Just prior to the collision the *Esso* also ordered her engines reversed, but even the prompt execution of the order was unavailing. At 0909.5 the vessels collided.

Sun Oil contends that prior to 0906.2 when the *Esso* commenced a 10° right swing, the *Sun's* master correctly concluded that the ships could have passed safely starboard-to-starboard; that the *Sun's* course change to the right was necessitated by the *Esso's* improper change of course from 360° to 010°; that even after *Esso's* right rudder the *Sun's* right rudder created a safe port-to-port passing situation; and that *Esso's* final hard left constituted the sole proximate cause of the collision.

Humble Oil argues that a safe starboard-to-starboard passing was never possible without earlier course changes. It insists that proper seamanship required the *Sun* to establish a port-to-port passing and to direct her course to *Esso's* stern; that the *Esso's* course change from 360° to 010° was justified as an attempt to create the correct passing pattern; that its subsequent hard left was executed not at 0908, but at 0907.3 before any perceptible course change by the *Sun*; and that this maneuver, putting the *Esso in extremis*, rendered any subsequent evasive tactics impossible. Humble concludes, more from dedicated advocacy than persuasive logic, that the sole cause of the collision was the *Sun's* failure to stay clear as required by the Inland Rules of the Road, Art. 19, 33 U.S.C. § 204, thus creating a situation in which each vessel found it necessary simultaneously to guess at the other's intentions. Alternatively, Humble urges that, assuming its negligence, the like negligence of *Sun* in the failure to change course earlier should have precluded *Sun's* right to recover.

Filing extensive Findings of Fact, a Discussion and Conclusions of Law, the district court resolved all critical doubts in favor of the *Sun*. It found that when the *Sun* first sighted the *Esso* on her radar at 0901 her master correctly concluded that there would be a safe starboard-to-starboard passing. It also found that the *Sun's* 10° and 20° right rudders (at 0907 and 0907.17) were necessitated by the *Esso's* swing to the right which began at 0906.2, and that had these respective courses been maintained the vessels would have been cleared for a port-to-port crossing at a distance of approximately 1500 feet.

It was determined that the *Sun* was at all material times proceeding "at a prudent and moderate rate of speed," and that the *Esso's* engines were full ahead and accelerating after picking up the pilot. The district court further found that *Esso* began her hard left rudder at 0908, that by this time the *Sun* had come 14° to her right, from 157° to 171°, that this course change should have been observed by the *Esso,* and that the *Esso* should have and could have done precisely the opposite of what she did do: she should have executed a hard right rather than a hard left. In the words of the district court, "[t]he sole substantial cause of the collision was the *Esso New York's* left rudder when the vessels were clear for a safe port-to-port passing." As noted, the *Sun* was held blameless.

We have engaged in a painstaking review of the record in this case. Had we presided at the trial of this cause it is possible that the complex factual array would have led us to a different result. But in our role as an appellate tribunal, we are unable to say that the essential findings of the district court on the negligence of the *Esso* and the exoneration of the *Sun* were "clearly erroneous." Rule 52(a), Fed.R.Civ.Proc. Although the evidence was not uncontradicted, it was sufficient to support the trial court's findings.

This court has carefully defined our role as an appellate court in reviewing factual findings of a trial court. In Speyer v. Humble Oil and Refining Co., 403 F.2d 766, 770 (3 Cir. 1968) we said:

> In reviewing the decision of the District Court, our responsibility is not to substitute findings we could have made had we been the fact-finding tribunal; our sole function is to review the record to determine whether the findings of the District Court were clearly erroneous, i.e., whether we are "left with a definite and firm conviction that a mistake has been committed."

This is consistent with the governing principles enunciated by the Supreme Court:

> While, of course, it would be our duty to correct clear error, even in the findings of fact, [plaintiff] has failed to establish any greater grievance here than it might have in any case where the evidence would support a conclusion either way but where the trial court has decided it to weigh more heavily for the defendants. Such a choice between two permissible views of the weight of the evidence is not "clearly erroneous."

United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949). And to the same effect is Mr. Justice Douglas' statement in United States v. National Ass'n of Real Estate Bds., 339 U.S. 485, 495–496, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950):

> It is not enough that we might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent. [citations omitted] We are not given those choices, because our mandate is not to set aside findings of fact "unless clearly erroneous."

Finally, we find no error in the allowance of damages for the expenses incurred in diverting another vessel to transport *Sun's* cargo to its destination, or in the award of interest—conceded by Humble to be discretionary—from the date of the collision. *See, e.g.,* Rugo Constr. Co. v. New England Foundation Co., 172 F.2d 964, 967–968 (1 Cir. 1949); O'Brien Bros. v. The Helen B. Moran, 160 F.2d 502, 506 (2 Cir. 1947).

The judgment of the district court will be affirmed.

On this record Judge SEITZ cannot accept as many of the findings and conclusions of the district court as does the majority. However, he concurs in the affirmance of the judgment below because there is a sufficient evidentiary basis for the conclusion of the district court that *Esso's* negligence was the sole proximate cause of the collision.