**In the Matter of the Complaint of SIN-CERE NAVIGATION CORPORATION, as owner of the S/S HELENA, for Exoneration from or Limitation of Liability and Consolidated Cases.**

Civ. A. Nos. 68–2254, 68–2243, 68–2250, 69–2340, 69–2341, 69–2535, 69–2613, 69–2628, 69–2742, 69–2743, 69–2854, 69–2855, 69–2889, 69–2899, 69–2903, 69–2923, 69–2924 and 70–40.

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 17, 1971.

Gerald J. Gallinghouse, U. S. Atty., Allen van Emerik, New Orleans, La., for United States.

George Frilot, A. J. McNamara, Joseph Horne, Charles M. Steen, Jerry G. Jones, Louis B. Merhige, Raymond A. McGuire, David H. Burrow, New Orleans, La., for individual Claimants.

Patrick L. Burke, Joy S. Miller, Joseph M. Brush, New Orleans, La., for Sincere Navigation and its Insurers.

RUBIN, District Judge:

## OPINION ON MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO DAMAGES CLAIMED FOR SALVAGE, SEARCH, AND WRECK REMOVAL EXPENSES

The United States seeks to recover for the damages occasioned as a result of the collision of the S/S HELENA and the Buoy Tender WHITE ALDER. The claims for the loss of the WHITE ALDER and the buoys aboard her at the time of collision and for recovery of the cost of medical care to the survivors, have been referred to a Magistrate as Special Master. The United States seeks also to recover for the expenses incurred in its search for survivors and in its efforts to salvage the vessel or remove the wreckage. The HELENA moves for summary judgment as to these items.

It is clear that the United States can receive no award for salvage as such because naught was saved. Norris, The Law of Salvage § 88 (1958). The WHITE ALDER came to rest in 70 feet of water. The shifting bed of the river there engulfed her.

As the Supreme Court observed in The Blackwall, 1869, 10 Wall. 1, 77 U.S. 1, 12, 19 L.Ed. 870, "Salvage is the compensation allowed to persons by whose assistance a ship or her cargo has been saved, in whole or in part from the impending peril of the sea * * * Success is essential to the claim * * *." The Fifth Circuit recently allowed salvage to the United States for services rendered to the AMOCO VIRGINIA, but in that case more than $900,000 worth of property was preserved for the benefit of the vessel's owner. AMOCO VIRGINIA, S. S., 5 Cir. 1969, 417 F.2d 164.

But some of the expenses incurred here cannot be called salvage. On the night of December 7, 1969, the United States as owner of the WHITE ALDER,

knew only that she had sunk in the river. It was necessary to make a search to determine whether or not she could be raised and saved.

■■ It was the duty of the United States as owner of the WHITE ALDER, to minimize damages. The Baltimore, 8 Wall. 377, 75 U.S. 377, 387, 19 L.Ed. 463. This duty imposed on it the obligation of making a good faith attempt to determine the feasibility of salvage. Rugo Constr. Co. v. New England Foundation Co., 1 Cir. 1949, 172 F.2d 964; O'Brien Bros. v. The Helen B. Moran, 2 Cir. 1947, 160 F.2d 502. If it did not, it might be charged with attempting to foist off as a total loss a vessel salvageable for less than her value.

■ If the owner has acted reasonably, considering the location and circumstances of the wreck, "he is entitled to recover from the tortfeasor his reasonable expenses of raising and removal in addition either to the fair value of his vessel, if she eventually proves to be a total loss, or to the reasonable cost of repairing her, etc., if she eventually proves to be only a partial loss." 172 F. 2d at 968. Whether or not the United States acted reasonably in investigating the condition of the vessel, and, if so, the extent of the monetary reimbursement due, is an issue remaining to be resolved.

■ As a private vessel owner, the United States also had the duty to the seamen aboard the WHITE ALDER to search for survivors of the wreck, and, with respect to those killed in her service, to seek to recover their bodies. See Lynn-Ventura, D.Mass.1956, 1957 A.M.C. 716, 717. It has been said that humanitarian acts are not compensable in maritime law, and that the saving of human life, unaccompanied by the saving of property, still goes unrewarded. Gilmore and Black, Law of Admiralty, p. 444; Norris, Law of Salvage, § 24. Even if this be so, the owner of a vessel who seeks to save his crew or recover their bodies is not free to be a samaritan, or to refrain from acting, burdened only with a guilty conscience. He has a duty to save the members of his crew, or, if they lie dead, to recover their remains and return them to their families.

It is evident that the United States Coast Guard might have performed similar investigative and rescue operations had the collision involved two private vessels. There is no contention that such operations, carried out under 14 U.S.C. § 83, would make the private ship owners liable to the United States for the expenses entailed. Where, traditionally, recovery has not been permitted the United States for the governmental services it provides, the courts have been reluctant to create a right of recovery. See United States v. Standard Oil Co., 1947, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. Congress, not the courts, properly considers the federal fiscal policies involved and weighs the "appropriateness of means to be used in executing the policy sought to be established." Id. at 314, 67 S.Ct. at 1611. The legislative branch is not ignorant of the expenses involved in the aid our armed services furnish ships in distress. In fact, Congress has provided for payment for salvage services furnished by the Air Force, 10 U.S.C. § 9804, and the Navy, 10 U.S.C. § 7365. In light of this, the Supreme Court's conclusion in the *Standard Oil* case is particularly apt:

> When Congress has thought it necessary to take steps to prevent interference with federal funds * * * it has taken positive action to that end. We think it would have done so here, if that had been its desire. This it may still do, if or when it so wishes.

United States v. Standard Oil Co., 332 U.S. 301, 315–316, 67 S.Ct. 1604, 1612 (footnote omitted.)

But the expenses incurred by the United States as a vessel owner were of a different nature. It had the obligations, and the rights, of any vessel owner. Recognition that the United States has the same claims that any other ship owner might assert in the same circumstances is merely the acknowledgment of a long-existent right, not creation of a

new one. See United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 1611–1612 notes 21 & 22, 91 L.Ed. 2067.

 Thus only those expenses incurred by the Coast Guard because a vessel owned by the United States was involved in the collision can be recovered. The Magistrate must determine which, if any, of the Coast Guard's expenses incurred in investigating whether the WHITE ALDER could be raised and saved, and in searching for survivors, would have been incurred had two private vessels collided. These expenses cannot be recovered. As the claimant, the United States has the burden of establishing which expenses are recoverable under this criterion.

The United States also seeks recovery for its investigation into the necessity for removing the wreck to facilitate navigation.

 As owner of the vessel, the United States had the duty to take whatever action might be necessary to remove any hazard to navigation the wreck might entail. In its governmental capacity, it had the right in rem and in personam to recover the cost of wreck removal from those who had negligently created the obstruction to navigation. Rivers and Harbors Act, 33 U.S.C.A. § 401 et seq. Wyandotte Transp. Co. v. United States, 1967, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407. Compare The Snug Harbor, E.D.N.Y.1931, 53 F.2d 407, 410.

It is a necessary concomitant of that right that the government be able to investigate the wreck to determine if it constitutes a sufficient navigational hazard to warrant removal. Reasonable expenses incurred are the responsibility of the negligent party. The extent of those expenses is still in dispute.

The Wreck Statute, 33 U.S.C. § 401 et seq., which is the basis for this recovery, has been construed by the Supreme Court to permit recovery for the expenses the United States Armed Forces incur in removing obstructions caused by private parties. Wyandotte Transp. Co.

v. U. S., 1967, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407. Thus the Magistrate will permit recovery of all the reasonable expenses the government can prove for this investigation without regard to whether the government would have incurred similar expenses had the vessels been privately owned.