John SASSONI, Plaintiff,

v.

Leslie SAVOIE and Midcontinent Underwriters Inc., Defendants.

Civ. A. No. 70-1782.

United States District Court,
E. D. Louisiana,
New Orleans Division.

May 27, 1971.

Darryl J. Carimi, New Orleans, La., for plaintiff.

Ronald A. Johnson, New Orleans, La., for defendants.

RUBIN, District Judge:

On February 13, 1970, John Sassoni injured his leg on the F/V LONER while employed on that vessel on the high seas. He sued both his employer and his employer's insurer. By motion for summary judgment, the insurer challenges the use of the Lousiana Direct Action Statute, LSA–R.S. 22:655, in this maritime suit.

This question has often been considered, though never directly decided by the courts of this circuit. In Guess v. Read, 5 Cir. 1961, 290 F.2d 622, the court held the statute inapplicable to accidents on the high seas because it found that Louisiana courts did not apply the statute when the injury occurred outside of Louisiana; a premise that proved incorrect when considered by the Louisiana Supreme Court in Webb v. Zurich Insurance Co., 1968, 251 La. 558, 205 So.2d 398. *Guess* seemed further to hold that the direct action could not be utilized in maritime suits for death or injury on the high seas even if the Louisiana Courts construed the statute to have extra-territorial effect. See Taylor v. Fishing Tools, Inc., E.D.La.1967, 274 F.Supp. 666, 672. Compare Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Ass'n, 5 Cir. 1969, 417 F.2d 1030, 1037–1038. The Fifth Circuit has, however, recently indicated that this is still an open question. Olympic Towing Corp. v. Nebel Towing Co., 5 Cir. 1969, 419 F.2d 230, 236. See also Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Ass'n, supra, 417 F.2d at 1040.

█ It "does not offend the constitutional imperative for the uniformity of admiralty for the Louisiana Direct Action Statute to apply to maritime cases occurring on inland waters of Louisiana." Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Ass'n, supra, 417 F.2d at 1037. Since the national uniformity of admiralty applies to navigation on inland waters as much as to maritime events in international waters, the Constitution would not forbid application of the Louisiana Direct Action Statute here.

It is now settled that Louisiana's Direct Action Statute applies to marine insurance policies. Olympic Towing Corp. v. Nebel Towing Co., supra, 419 F.2d at 236–237. In the Matter of Sincere Navigation Corporation, E.D.La.1971, 327 F. Supp. 1024. There remains only the question: "taking into account the National and International interests behind that element * * * for this maritime case [is] the Direct Action Statute" applicable? Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Ass'n, supra, 417 F.2d at 1040.

The state clearly has an interest in permitting its injured citizens to sue the tortfeasor's insurer when the tortfeasor and the insurer both do business in the state. Losses are not then left uncompensated by a judgment-proof defendant. The duplication of actions required where injured persons must first execute against the tortfeasor and then the tortfeasor must seek indemnity from the assured is avoided. This regulation of insurance companies doing business in Louisiana has long been sanctioned by the courts. See Cushing v. Maryland Cas. Co., 5 Cir. 1952, 198 F.2d 536, 539, vac. on other grounds sub nom. Maryland Cas. Co. v. Cushing, 347 U.S. 409, 74 S. Ct. 608, 98 L.Ed. 806.

Nor does the federal interest in a uniform maritime law preclude approval of the direct action procedure in this case. There is no greater "lack of uniformity" in permitting a direct action for injuries on the high seas than there is for injuries in territorial waters. Nor is the vessel owner exposed by the Louisiana Direct Action Statute to any different requirement as to standard of care or navigation equipment. Fault and liability are determined by nationally uniform maritime standards. The sole change is that an additional party, who has contracted to be ultimately liable, is made vulnerable to suit.

The statute does not apply ipso facto to the Continental Shelf, nor may it be invoked "to subject a foreign vessel owner and her foreign, but amenable, underwriters to a suit in a Louisiana Federal Court" under circumstances where the "vessel never had been and never would trade to and from Louisiana ports." Id. 417 F.2d at 1039–1040.

█ The insurance policy involved here was not effected in the coffee houses of London, though the risk was ultimately underwritten there. The contract originated with a certificate of

insurance effected through Mid-Continent Underwriters, Inc. of New Orleans, La. The P and I (liability) coverage is to Leslie Savoie, whom the policy itself showed to be a resident of Cut Off, Louisiana. The insured vessel, the F/V LONER, was a fishing boat, operating from a Louisiana port. Sassoni, a member of its crew, was a Louisiana resident. The certificate of insurance is subject to the American Shrimp Boat Clause. This selfsame policy would subject the insurer to a direct action had Sassoni been injured while the LONER was in Louisiana territorial waters en route from Cut Off to fish in the Gulf. Lovless v. Employers' Liab. Assurance Corp., 5 Cir. 1955, 218 F.2d 714; In the Matter of Sincere Navigation Corp., E.D.La.1970, 317 F.Supp. 1. Cf. Continental Oil Co. v. London Steam-Ship Owners' Mutual Ins. Ass'n, supra, 417 F.2d at 1037. The mere circumstance that the vessel was in international waters when Sassoni was injured does not destroy the protection of Louisiana law to which he was entitled and under which the insurers knowingly bound themselves. Accordingly, the motion for summary judgment is denied.